**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON (SBN 175650)
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN (SBN 305541)
*mike@consumersadvocates.com*
LILACH HALPERIN (SBN 323202)
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Attorneys for Plaintiff and the Proposed Classes***

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASHAUNA SEALE an individual, on behalf of herself, all others similarly situated, and the general public, | Case No.: 2:23-cv-842 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | **DEMAND FOR JURY TRIAL** |
| GSK CONSUMER HEALTH, INC., | |
| Defendant. | |

1

Plaintiff Tashauna Seale ("Plaintiff"), on behalf of herself, all others similarly situated, and the general public, by and through her undersigned counsel, hereby sues GSK Consumer Health, Inc. ("Defendant") and, upon information and belief and investigation of counsel, alleges as follows:

## I.    INTRODUCTION

1.    Defendant makes, distributes, sells, and markets cough medicine products for children and adults under the brand name Robitussin. The products at issue include the Children's Robitussin 12-Hour Cough Relief product and Children's Robitussin Elderberry Cough + Chest Congestion DM product (collectively, the "Products").

2.    Defendant sells two separate versions of the Products: one advertised for adults, and one advertised for children. The Products marketed for children are named "Children's," display cartoon-like illustrations of a child or inanimate fruit, and state that the Products are "For Ages 4 & Over" or "For Ages 4+."

3.    The 12-Hour Cough Relief product marketed for adults does not have the word "Children" anywhere on the front label, does not contain cartoon-like illustrations of a child, and does not provide an age range.

4.    The Elderberry product marketed for adults does not have the word "Children" anywhere on the front label and does not contain illustrations of inanimate fruits. The front label of the Adult's Elderberry Product represents that the Product is an "Adult" product, suitable only "For Ages 12+." The directions on the rear-label state "this adult product is not intended for use in children under 12 years of age" and warn "children under 12 years: do not use."

5.    These representations lead reasonable consumers to believe that the Robitussin products advertised for children are more suitable for children and the Robitussin products advertised for adults are suitable only for adults. Based on this reasonable belief, consumers are willing to pay more for the Children's products. Reasonable consumers are willing to pay more for the Children's Robitussin

products because they want a product that is specifically formulated for children and is guaranteed to be safe for children to consume.

6.  The truth, however, is that the Children's Robitussin products have the exact same formula and ingredients as the Adult's Robitussin products. Defendant puts the same cough syrup into two separate products with different labels. Consumers are being deceived and overcharged.

7.  Plaintiff read and relied upon Defendant's advertising when purchasing the Products and was damaged as a result.

8.  Plaintiff brings this action on behalf of herself and all other similarly situated consumers in the United States, alleging violations of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"), Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"), and False Advertising Law, *id*. §§ 17500 *et seq*. ("FAL"). Plaintiff brings further causes of action for breach of express and implied warranties, negligent misrepresentation, intentional misrepresentation/fraud, and quasi-contract/unjust enrichment.

9.  Plaintiff seeks an order compelling Defendant to (a) cease marketing the Products using the misleading and unlawful tactics complained of herein, (b) destroy all misleading, deceptive, and unlawful materials, (c) conduct a corrective advertising campaign, (d) restore the amounts by which it has been unjustly enriched, and (e) pay restitution damages and punitive damages, as allowed by law

## II.    <u>JURISDICTION AND VENUE</u>

10.  This Court has original jurisdiction under 28 U.S.C. § 1332(d)(2) (The Class Action Fairness Act) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs and because more than two-thirds of the members of the Class reside in states other than the state of which Defendant is a citizen.

11.  The court has personal jurisdiction over Defendant. Defendant purposely availed itself to California because Defendant transacts, is registered to

do business, and does business within this judicial district, and is committing the acts complained of below within this judicial district.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the injury in this case substantially occurred in this District. Defendant has intentionally availed itself of the laws and markets of this District through the promotion, marketing, distribution, and sale of the Products in this District, and is subject to personal jurisdiction in this District.

### III.   PARTIES

13.    Defendant GSK Consumer Health, Inc. is a corporation with its principal place of business at 184 Liberty Corner Road, Suite 200, Warren, NJ 07059. Defendant is registered to do business in California as entity number 1926275. Defendant manufactures, distributes, markets, and sells the Robitussin products throughout the United States and in California. Defendant is responsible for the making, labelling, distribution, selling, and marketing of the Robitussin products throughout the applicable statute of limitations period.

14.    Plaintiff Tashauna Seale ("Plaintiff") is a resident of California and purchased the Products for personal and household use and not for resale during the Class Period. Plaintiff purchased the Children's Elderberry Product at a CVS store in Encino, California, and may have also purchased the Children's Products at CVS, Walmart, and/or Walgreens stores in Encino, CA, Tarzana, CA, West Hills, CA, and Reseda, CA. Plaintiff's most recent purchase of the Children's Elderberry Product was between 2020 and 2022. Plaintiff saw the misrepresentations made on the Products' labels prior to and at the time of purchase and understood them as representations and warranties that the Products marketed for children were specially formulated for children, safe for children to consume, or otherwise uniquely suitable for children. Plaintiff relied on the representations made on the Products' labels in deciding to purchase the Products. These representations and warranties were part of her basis of the bargain, in that she would not have purchased the Products, or

would only have been willing to purchase the Products at a lower price, had she known the representations were false. Plaintiff would consider purchasing the Products again if the advertising statements made on the Products labels were, in fact, truthful and represented in a manner as not to deceive consumers.

## IV.   NATURE OF THE ACTION

### A. Defendant Makes, Markets, Distributes, and Sells Robitussin Products

15.   "Revenue in the Cold & Cough Remedies segment amounts to US$41.94bn in 2023. The market is expected to grow annually by 6.10% (CAGR 2023-2027). In global comparison, most revenue is generated in the United States (US$10,820.00m in 2023)."[1]

16.   Approximately 1 in 10 U.S. children use a cough and cold medication in a given week with approximately 4.1% using dextromethorphan.[2] There are approximately 50 million children in the United States.[3] It follows that millions of children use a cough and cold medication in a given week.

17.   Defendant distributes various Children's Robitussin products marketed for children and Adult Robitussin products that are marketed for adults.

18.   The Robitussin products marketed for children are all labeled as "Children's." The Children's products are labeled "For Ages 4 & Over" or "For Ages 4+", and contain cartoon-like illustrations of a child or inanimate fruit. The adult Robitussin Products are not marketed to children and have no cartoon-like images or illustrations. The Adult 12-Hour Cough Relief product does not list an age range. The Adult Elderberry product represents that it is an "Adult" product suitable only for "Ages 12+" and "not intended for use in children under 12 years of age."

---

[1] https://www.statista.com/outlook/cmo/otc-pharmaceuticals/cold-cough-remedies/worldwide

[2] https://pubmed.ncbi.nlm.nih.gov/18676518/

[3] https://www.statista.com/statistics/457786/number-of-children-in-the-us-by-age/

19.     True and correct copies of the front label of the Children's Robitussin 12 Hour Cough Relief and adult's Robitussin 12 Hour Cough Relief as shown on robitussin.com are shown below:

 

20.     The Children's Robitussin 12 Hour Cough Relief product is listed in the "For Children" category on Robitussin.com, while the adult's Robitussin 12 Hour Cough Relief is listed in the "For Adults" category.

21.     The description of the Children's 12-Hour Cough Relief product on the robitussin.com website states "For your child's cough, trust Children's Robitussin Extended-Release 12 Hour Cough Relief to control and relieve symptoms all-day or all-night." Below is a true and correct copy of a screenshot of the Children's 12 Hour Cough Relief product from robitussin.com showing that it is listed in the "For Children" category:

| For Adults | For Children | Robitussin Naturals | Product Finder | Cough and Cold Center | Our Stories | Safety Information |

⌂ > For Children > Children's 12 Hour Cough Relief

## Robitussin Children's 12 Hour Cough Relief Medicine

### Ages 4 and up

For your child's cough, trust Children's Robitussin Extended-Release 12 Hour Cough Relief° to control and relieve symptoms all-day or all-night. .

° This product contains the active ingredients Dextromethorphan.

★★★★½  4.7 (43)   Write a review

PRODUCT LABELING ›

[ BUY NOW ]

22.    Below is a true and correct copy of a screenshot of the adult's Robitussin 12 Hour Cough Relief product from robitussin.com showing that it is listed in the "For Adults" category:

| For Adults | For Children | Robitussin Naturals | Product Finder | Cough and Cold Center | Our Stories | Safety Information |

⌂ > For Adults > 12 Hour Cough Relief



## Robitussin 12 Hour Cough Relief

Take back your day with Robitussin 12 Hour. It soothes your throat and delivers fast, powerful cough relief that lasts from morning until night. Available in orange and grape flavors, sold separately.

° This product contains the active ingredients Dextromethorphan polistirex and Dextromethorphan hydrobromide.

★★★★½  4.6 (105)   Write a review

PRODUCT LABELING ›

[ BUY NOW ]

CLASS ACTION COMPLAINT

23.    A true and correct copy of the ingredient list for the Children's Robitussin 12 Hour Cough Relief product as shown on robitussin.com is shown below:

### Children's Robitussin 12 Hour Cough Relief
#### Dextromethorphan Polistirex Extended-Release Oral Suspension

This is the most current labeling information and may differ from labels on product packaging. If there are any differences between this website labeling and product packaging labeling, this website labeling should be regarded as the most current.

---

## Drug Facts

**Active ingredient (in each 5 mL)**                                    **Purpose**

Dextromethorphan polistirex equivalent to 30 mg
dextromethorphan hydrobromide, USP...................................... Cough suppressant

**Uses** temporarily relieves
- cough due to minor throat and bronchial irritation as may occur with the common cold or inhaled irritants
- the impulse to cough to help you get to sleep

**Warnings**

**Do not use** if you are now taking a prescription monoamine oxidase inhibitor (MAOI) (certain drugs for depression, psychiatric, or emotional conditions, or Parkinson's disease), or for 2 weeks after stopping the MAOI drug.  If you do not know if your prescription drug contains an MAOI, ask a doctor or pharmacist before taking this product.

**Allergy Alert:** Contains sodium metabisulfite, a sulfite that may cause allergic-type reactions.

**Ask a doctor before use if you have**
- chronic cough that lasts as occurs with smoking, asthma, or emphysema
- cough that occurs with too much phlegm (mucus)

**Stop use and ask a doctor if**
- side effects occur. You may report side effects to FDA at 1-800-FDA-1088.
- cough lasts more than 7 days, cough comes back, or occurs with fever, rash, or headache that lasts.  These could be signs of a serious condition.

**If pregnant or breast-feeding,** ask a health professional before use.
**Keep out of reach of children.**  In case of overdose, get medical help or contact a Poison Control Center right away 1-800-222-1222.

---

24.    A true and correct copy of the ingredient list for the adult's Robitussin 12 Hour Cough Relief product as shown on robitussin.com is shown below:

//
//
//

CLASS ACTION COMPLAINT

### Robitussin 12 Hour Cough Relief

**Dextromethorphan Polistirex Extended-Release Oral Suspension**

This is the most current labeling information and may differ from labels on product packaging. If there are any differences between this website labeling and product packaging labeling, this website labeling should be regarded as the most current.

---

**Drug Facts**

---

**Active ingredient (in each 5 mL)**            **Purpose**
Dextromethorphan polistirex equivalent to 30 mg
dextromethorphan hydrobromide, USP..................................... Cough suppressant

---

**Uses** temporarily relieves
- cough due to minor throat and bronchial irritation as may occur with the common cold or inhaled irritants
- the impulse to cough to help you get to sleep

---

**Warnings**

**Do not use** if you are now taking a prescription monoamine oxidase inhibitor (MAOI) (certain drugs for depression, psychiatric, or emotional conditions, or Parkinson's disease), or for 2 weeks after stopping the MAOI drug.  If you do not know if your prescription drug contains an MAOI, ask a doctor or pharmacist before taking this product.

**Allergy Alert:** Contains sodium metabisulfite, a sulfite that may cause allergic-type reactions.

---

**Ask a doctor before use if you have**
- chronic cough that lasts as occurs with smoking, asthma, or emphysema
- cough that occurs with too much phlegm (mucus)

---

**Stop use and ask a doctor if**
- side effects occur. You may report side effects to FDA at 1-800-FDA-1088.
- cough lasts more than 7 days, cough comes back, or occurs with fever, rash, or headache that lasts.  These could be signs of a serious condition.

---

**If pregnant or breast-feeding,** ask a health professional before use.
**Keep out of reach of children.**  In case of overdose, get medical help or contact a Poison Control Center right away 1-800-222-1222.

25.     True and correct copies of the dosage charts for both the Children's 12-Hour Cough Relief and Adult 12-Hour Cough Relief products are shown below:

//

//

//

//

//

//

//

//

**Children's Robitussin 12 Hour Cough Relief**

Dextromethorphan Polistirex Extended-Release Oral Suspension

ost current labeling information and may differ from labels on product packaging. If there are etween this website labeling and product packaging labeling, this website labeling should be current.

**Robitussin 12 Hour Cough Relief**

Dextromethorphan Polistirex Extended-Release Oral Suspension

ost current labeling information and may differ from labels on product packaging. If there are between this website labeling and product packaging labeling, this website labeling should be current.

**Directions**
- shake bottle well before use
- measure only with dosing cup provided.  Do not use dosing cup with other products
- dose as follows or as directed by doctor
- mL = milliliter

| adults and children 12 years of age and over | 10 mL every 12 hours, not to exceed 20 mL in 24 hours |
| children 6 to under 12 years of age | 5 mL every 12 hours, not to exceed 10 mL in 24 hours |
| children 4 to under 6 years of age | 2.5 mL every 12 hours, not to exceed 5 mL in 24 hours |
| children under 4 years of age | do not use |

**Other information**
- each 5 mL contains: **sodium 5 mg**
- store at 20-25°C (68-77°F)
- dosing cup provided

**Inactive ingredients** (Orange flavor)
D&C red no. 30, D&C yellow no. 10, flavor, glycerin, high fructose corn syrup, methylparaben, polysorbate 80, polyvinyl acetate, povidone, propylparaben, purified water, sodium metabisulfite, sodium polystyrene sulfonate, sucrose, tartaric acid, tragacanth gum, triacetin, xanthan gum

**Inactive ingredients** (Grape flavor)
D&C red no. 30, FD&C blue no. 1, flavor, glycerin, high fructose corn syrup, methylparaben, polysorbate 80, polyvinyl acetate, povidone, propylparaben, purified water, sodium metabisulfite, sodium polystyrene sulfonate, sucrose, tartaric acid, tragacanth gum, triacetin, xanthan gum

**Questions?** call weekdays from 9 AM to 5 PM EST at **1-800-762-4675**. You may also report side effects to this number.

**Directions**
- shake bottle well before use
- measure only with dosing cup provided.  Do not use dosing cup with other products
- dose as follows or as directed by doctor
- mL = milliliter

| adults and children 12 years of age and over | 10 mL every 12 hours, not to exceed 20 mL in 24 hours |
| children 6 to under 12 years of age | 5 mL every 12 hours, not to exceed 10 mL in 24 hours |
| children 4 to under 6 years of age | 2.5 mL every 12 hours, not to exceed 5 mL in 24 hours |
| children under 4 years of age | do not use |

**Other information**
- each 5 mL contains: **sodium 5 mg**
- store at 20-25°C (68-77°F)
- dosing cup provided

**Inactive ingredients** (Orange flavor)
D&C red no. 30, D&C yellow no. 10, flavor, glycerin, high fructose corn syrup, methylparaben, polysorbate 80, polyvinyl acetate, povidone, propylparaben, purified water, sodium metabisulfite, sodium polystyrene sulfonate, sucrose, tartaric acid, tragacanth gum, triacetin, xanthan gum

**Inactive ingredients** (Grape flavor)
D&C red no. 30, FD&C blue no. 1, flavor, glycerin, high fructose corn syrup, methylparaben, polysorbate 80, polyvinyl acetate, povidone, propylparaben, purified water, sodium metabisulfite, sodium polystyrene sulfonate, sucrose, tartaric acid, tragacanth gum, triacetin, xanthan gum

**Questions?** call weekdays from 9 AM to 5 PM EST at **1-800-762-4675**. You may also report side effects to this number.

26.   As shown above, both the children's and the adult's 12 Hour Cough Relief products contain the same amount of the same active and inactive ingredients and the same dosage charts.

27.   Both the children's and the adult's 12 Hour Cough Relief products contain the following active ingredient: "Dextromethorphan polistirex equivalent to 30 mg dextromethorphan hydrobromide, USP."

28.   Both the children's and the adult's 12 Hour Cough Relief orange flavored products also contain the following inactive ingredients: "D&C red no. 30, D&C yellow no. 10, flavor, glycerin, high fructose corn syrup, methylparaben, polysorbate 80, polyvinyl acetate, povidone, propylparaben, purified water, sodium metabisulfite, sodium polystyrene sulfonate, sucrose, tartaric acid, tragacanth gum, triacetin, xanthan gum."

29.   Both the children's and the adult's 12 Hour Cough Relief grape

10

flavored products also contain the following inactive ingredients: "D&C red no. 30, FD&C blue no. 1, flavor, glycerin, high fructose corn syrup, methylparaben, polysorbate 80, polyvinyl acetate, povidone, propylparaben, purified water, sodium metabisulfite, sodium polystyrene sulfonate, sucrose, tartaric acid, tragacanth gum, triacetin, xanthan gum."

30.    Both the Children's and Adult's 12-Hour Cough Relief products come with an identically-sized dosing cup, which contains measurements for 2.5 mL, 5 mL, and 10 mL:



31.    True and correct copies of the front label of the Children's Robitussin Elderberry Cough + Chest Congestion DM product and adult's Elderberry Cough + Chest Congestion DM product as shown on robitussin.com are shown below:

//
//
//
//
//
//
//
//

CLASS ACTION COMPLAINT

 

32.   The Children's Robitussin Elderberry Cough + Chest Congestion DM product is listed in the "For Children" category on Robitussin.com, while the adult's Elderberry Cough + Chest Congestion DM product is listed in the "For Adults" category.

33.   The description of the Children's Elderberry product on the robitussin.com website states "Help your little ones have better days with fast, soothing cough and chest relief made with real elderberries for great taste. Take comfort in knowing that they're taking an alcohol-free and gluten-free formula made with zero artificial color or dyes."

34.   Below is a true and correct copy of a screenshot of the Children's Robitussin Elderberry Cough + Chest Congestion DM product from robitussin.com showing that it is listed in the "For Children" category:

//

CLASS ACTION COMPLAINT



35.     Below is a true and correct copy of a screenshot of the adult's Elderberry Cough and Chest Congestion DM product from robitussin.com showing that it is listed in the "For Adults" category:





13

36.    True and correct copies of the ingredient lists and dosing charts for the Children's Robitussin Elderberry Cough + Chest Congestion DM and Adult Robitussin Elderberry Cough & Chest Congestion DM products are shown below:

**Children's Robitussin Elderberry Cough + Chest Congestion DM**

Dextromethorphan HBr, USP 20 mg; Guaifenesin, USP 400 mg

This is the most current labeling information and may differ from labels on product packaging. If there are any differences between this website labeling and product packaging labeling, this website labeling should be regarded as the most current.

**Drug Facts**

**Active ingredients** (in each 20 ml)                    **Purposes**
Dextromethorphan HBr, USP 20 mg...Cough suppressant
Guaifenesin, USP 400 mg ............................Expectorant

**Uses**
■ temporarily relieves cough due to minor throat and bronchial irritation as may occur with a cold
■ helps loosen phlegm (mucus) and thin bronchial secretions to drain bronchial tubes

**Warnings**
**Do not use** if you are now taking a prescription monoamine oxidase inhibitor (MAOI) (certain drugs for depression, psychiatric, or emotional conditions, or Parkinson's disease), or for 2 weeks after stopping the MAOI drug. If you do not know if your prescription drug contains an MAOI, ask a doctor or pharmacist before taking this product.

**Ask a doctor before use if you have**
■ cough that occurs with too much phlegm (mucus)
■ cough that lasts or is chronic such as occurs with smoking, asthma, chronic bronchitis, or emphysema

**Stop use and ask a doctor if** cough lasts more than 7 days, comes back, or is accompanied by fever, rash, or persistent headache. These could be signs of a serious condition. ➤

**Robitussin Elderberry Cough + Chest Congestion DM**

Dextromethorphan HBr, USP 20 mg, Guaifenesin, USP 400 mg

This is the most current labeling information and may differ from labels on product packaging. If there are any differences between this website labeling and product packaging labeling, this website labeling should be regarded as the most current.

**Drug Facts**

**Active ingredients** (in each 20 ml)                    **Purposes**
Dextromethorphan HBr, USP 20 mg...Cough suppressant
Guaifenesin, USP 400 mg ............................Expectorant

**Uses**
■ temporarily relieves cough due to minor throat and bronchial irritation as may occur with a cold
■ helps loosen phlegm (mucus) and thin bronchial secretions to drain bronchial tubes

**Warnings**
**Do not use** if you are now taking a prescription monoamine oxidase inhibitor (MAOI) (certain drugs for depression, psychiatric, or emotional conditions, or Parkinson's disease), or for 2 weeks after stopping the MAOI drug. If you do not know if your prescription drug contains an MAOI, ask a doctor or pharmacist before taking this product.

**Ask a doctor before use if you have**
■ cough that occurs with too much phlegm (mucus)
■ cough that lasts or is chronic such as occurs with smoking, asthma, chronic bronchitis, or emphysema

**Stop use and ask a doctor if** cough lasts more than 7 days, comes back, or is accompanied by fever, rash, or persistent headache. These could be signs of a serious condition. ➤

//
//
//
//
//
//
//
//
//

14

**Children's Robitussin Elderberry Cough + Chest Congestion DM**

Dextromethorphan HBr, USP 20 mg; Guaifenesin, USP 400 mg

This is the most current labeling information and may differ from labels on product packaging. If there are any differences between this website labeling and product packaging labeling, this website labeling should be regarded as the most current.

**Drug Facts** (continued)

**If pregnant or breast-feeding,** ask a health professional before use.
**Keep out of reach of children.** In case of overdose, get medical help or contact a Poison Control Center right away.

**Directions**
■ do not take more than 6 doses in any 24-hour period
■ measure only with dosing cup provided
■ keep dosing cup with product     ■ ml = milliliter

| age | dose |
|---|---|
| children under 4 years | do not use |
| children 4 to under 6 years | 5 ml every 4 hours |
| children 6 to under 12 years | 10 ml every 4 hours |
| adults and children 12 years and over | 20 ml every 4 hours |

**Other information**
■ each 20 ml contains: **potassium 5 mg, sodium 20 mg**
■ store at 20-25°C (68-77°F). Do not refrigerate.

**Inactive ingredients**
anhydrous citric acid, black elderberry juice concentrate (for flavor), carboxymethylcellulose sodium, glycerin, liquid glucose, maltodextrin, natural and artificial flavors, polyethylene glycol, propylene glycol, purified water, sodium benzoate, sodium citrate, sodium gluconate, sucralose, xanthan gum, zinc gluconate

**Robitussin Elderberry Cough + Chest Congestion DM**

Dextromethorphan HBr, USP 20 mg, Guaifenesin, USP 400 mg

This is the most current labeling information and may differ from labels on product packaging. If there are any differences between this website labeling and product packaging labeling, this website labeling should be regarded as the most current.

**If pregnant or breast-feeding,** ask a health professional before use.
**Keep out of reach of children.** In case of overdose, get medical help or contact a Poison Control Center right away.

**Directions**
■ do not take more than 6 doses in any 24-hour period
■ measure only with dosing cup provided
■ keep dosing cup with product     ■ ml = milliliter
■ this adult product is not intended for use in children under 12 years of age

| age | dose |
|---|---|
| adults and children 12 years and over | 20 ml every 4 hours |
| children under 12 years | do not use |

**Other information**
■ each 20 ml contains: **potassium 5 mg, sodium 20 mg**
■ store at 20-25°C (68-77°F). Do not refrigerate.

**Inactive ingredients**
anhydrous citric acid, black elderberry juice concentrate (for flavor), carboxymethylcellulose sodium, glycerin, liquid glucose, maltodextrin, natural and artificial flavors, polyethylene glycol, propylene glycol, purified water, sodium benzoate, sodium citrate, sodium gluconate, sucralose, xanthan gum, zinc gluconate

37.     As shown above, both the children's and the adult's Elderberry Cough + Chest Congestion DM products contain the same amount of the same active and inactive ingredients.

38.     Both the children's and the adult's Elderberry Cough + Chest Congestion DM products contain the following active ingredients in each 20 mL: "Dextromethorphan HBr, USP 20 mg and Guaifenesin, USP 400 mg."

39.     Both the children's and the adult's Elderberry Cough + Chest Congestion DM products also contain the following inactive ingredients: "anhydrous citric acid, black elderberry juice concentrate (for flavor), carboxymethylcellulose sodium, glycerin, liquid glucose, maltodextrin, natural and artificial flavors, polyethylene glycol, propylene glycol, purified water, sodium benzoate, sodium citrate, sodium gluconate, sucralose, xanthan gum, zinc gluconate".

CLASS ACTION COMPLAINT

40.    In other words, both Elderberry products are identical in form and quantity.

41.    Yet, the Adult's Elderberry product represents that it is an "Adult" product suitable only "For Ages 12+." The rear-label contains a warning stating "this adult product is not intended for use in children under 12 years of age" and the dosing chart directs "children under 12 years: do not use."

42.    Both the Children's and Adult's Elderberry Cough + Chest Congestion DM products come with an identically-sized dosing cup. The Children's Elderberry dosing cup indicates measurements of 5 ml, 10 ml, and 20 ml, while the Adult's Elderberry dosing cup only indicates a measurement of 20 ml:



43.    Defendant intentionally omits the 5 ml and 10 ml measurement indicators from the Adult's dosing cup to require consumers to purchase the Children's product at a premium, despite the two products being pharmacologically identical.

44.    Defendant's intentional omission of the 5ml and 10 ml graduations is also problematic in other ways. Defendant previously had to recall two different products due to the inclusion of incorrect dosing cups. Specifically, "the dosing cups for the Children's Robitussin® Honey product [we]re missing the 5 mL and 10 mL graduations, while the dosing cups for the Children's Dimetapp® product [we]re missing the 10 mL graduation. The dosing cups packaged with both products only

1    ha[d] the 20 mL graduation."[4]

2    **B.  The Robitussin Product Labels are Misleading to Reasonable Consumers**

3           45.    Based on the different marketing and labeling on the front of the adult's

4    Robitussin products and the labeling on the front of the Children's Robitussin

5    products, reasonable consumers believe that there is something different about the

6    adults' Robitussin products and the Children's Robitussin products that makes the

7    Children's Products better suited or more appropriate for children.

8           46.    Defendant also failed to adequately disclose that the Children's

9    Robitussin Products are simply the Adult's Robitussin products sold at a higher

10   price.

11          47.    Defendant's misrepresentations and omissions are misleading because

12   the Children's Products are the same as the Adult's Products.

13          48.    Because Defendant's advertising warns consumers that children may

14   only use the Children's products, and that the Adult's products are only suitable for

15   adults, consumers are forced to purchase two products instead of one.

16          49.    Defendant also charges more for the Children's products than the

17   Adult's products.

18          50.    Per ounce, the Children's 12-Hour Cough Relief product costs

19   approximately $2.44 more than the Adult 12-Hour Cough Relief product. For

20   example, FamilyOTC.com sells a 3.0 fl. oz. (89 mL) container of the Children's 12-

21   Hour Cough Relief product for $11.00, or $3.66/oz.[5] Walmart sells a 5.0 fl. oz. (148

22

23

24

25   [4]  https://www.fda.gov/safety/recalls-market-withdrawals-safety-alerts/gsk-consumer-healthcare-
     issues-voluntary-nationwide-recall-childrens-robitussinr-honey-cough-and

26
     [5] https://familyotc.com/products/robitussin-extended-release-12-hour-cough-relief-liquid-orange-
27   flavor-for-ages-4-3-
     oz?variant=8641830715428&currency=USD&utm_medium=product_sync&utm_source=google
28   &utm_content=sag_organic&utm_campaign=sag_organic

CLASS ACTION COMPLAINT

mL) container of the Adult 12-Hour Cough Relief product for $6.08, or $1.22/oz.[6]

51.    Per ounce, the Children's Elderberry product costs approximately $0.25 more than the Adult Elderberry product. For example, Walgreens sells a 4.0 oz. container of the Children's Elderberry product for $8.99, or $2.24/oz.[7] Walgreens sells an 8.0 oz. container of the Adult Elderberry product for $15.99, or $1.99/oz.[8]

52.    Defendant charges a premium for the Children's Robitussin products compared to the adults' Robitussin products for the same amount of fluid ounces. Yet, both the children's and adult's Robitussin products contain the same amount of the same active and inactive ingredients. The only difference is that one is labeled for children, and one is labeled for adults.

53.    The Children's Robitussin Products are not specially formulated for children. The Children's Robitussin Products are identical to the adult's Robitussin products. Yet, the adult Robitussin products cost less than the Children's Robitussin products. Defendant takes the same exact product and puts it in two different forms of packaging: one labeled for children, and one labeled for adults. Then, Defendant charges more for the Products marketed for children. In short, Defendant tricks consumers into thinking they are buying cough relief products specially formulated for children, when in reality, consumers are just buying Defendant's Robitussin products for adults in a different packaging marketed for children.

54.    Consumers buy the Children's Robitussin products based on the belief that they are specially formulated for children and safer for children to consume. There is a reason that children have different medicine and are recommended to have different dosages of medicine than adults, and consumers that want to keep children

---

[6]   https://www.walmart.com/ip/Robitussin-Extended-Release-12-Hour-Cough-Liquid-Medicine-Grape-5-Fl-Oz/54309617

[7]                          https://www.walgreens.com/store/c/robitussin-children's-cough-medicine-elderberry/ID=300420043-product

[8]                          https://www.walgreens.com/store/c/robitussin-cough-medicine,-non-drowsy-elderberry/ID=300431086-product

CLASS ACTION COMPLAINT

safe rely on companies to not mislead them into paying more for products.

55.    No reasonable consumer who understood that the Children's Robitussin Products were formulated identically to the adult's Robitussin products would choose to pay more for it.

**C. Plaintiff's Purchases, Reliance, and Injury**

56.    Plaintiff Tashauna Seale purchased the Children's Robitussin products several times throughout the class period at CVS, Walmart, and/or Walgreens stores in reliance on the front-label claims that the Products were specifically for children. Plaintiff's most recent purchase was in or around 2020-2022 and the cost of the Products was approximately $10.00.

57.    When deciding to purchase the Products, Plaintiff read and relied on the advertisement that the Children's Robitussin Products were for "children," as well as the additional children-specific representations, which appear directly on the front label of the Products' labels and packaging.

58.    Based on these representations, Plaintiff believed that the Products were specially formulated for children and bought them specifically for this reason.

59.    Plaintiff would not have purchased the Children's Products if Plaintiff had known that the Products were, in fact, identical to the Robitussin products marketed for adults, which cost less than the Children's Robitussin products. Plaintiff paid a premium for these Products due to the misleading labelling on the Products' packaging. Had Plaintiff known the truth, Plaintiff would not have purchased the Products or would not have paid as much as she had for the Products.

60.    The representations on the Products' labels were and are false and misleading, and had the capacity, tendency, and likelihood to confuse or confound Plaintiff and other consumers acting reasonably (including the putative Class) because, as described in detail herein, the Children's Products are identical to the Robitussin products marketed to adults and are not specially formulated for children.

61.    Plaintiff acted reasonably in relying on the challenged claims that

CLASS ACTION COMPLAINT

Defendant intentionally placed on the Products' label and packaging with the intent to induce average consumers into purchasing them.

62.     Plaintiff first discovered Defendant's unlawful acts described herein in February 2023 when she learned that the Children's Products were pharmacologically identical to the Adult's products.

63.     Plaintiff, in the exercise of reasonable diligence, could not have discovered earlier Defendant's unlawful acts described herein because the violations were known to Defendant, and not to her throughout the Class Period defined herein.

64.     The Children's Products cost more than the Adult's Products without misleading labeling and would have cost less absent the false and misleading statements.

65.     Plaintiff paid more for the Children's products, and would only have been willing to pay less, or unwilling to purchase them at all, absent the false and misleading labeling statements complained of herein.

66.     For these reasons, the Products were worth less than what Plaintiff paid for them.

67.     Plaintiff would like to, and would consider, purchasing the Products again when she can do so with the assurance that the Products' labels are truthful and consistent with the Products' ingredients.

68.     Plaintiff will be unable to rely on the Products' advertising or labeling in the future, and so will not purchase the Products again although she would like to.

69.     Plaintiff lost money as a result of Defendant's deceptive claims and practices in that she did not receive what she paid for when purchasing the Products.

70.     Plaintiff detrimentally altered her position and suffered damages in an amount equal to the premium she paid for the Products.

71.     The senior officers and directors of Defendant allowed the Products to be sold with full knowledge or reckless disregard that the challenged claims are fraudulent, unlawful, and misleading.

CLASS ACTION COMPLAINT

## V.   CLASS ACTION ALLEGATIONS

72.    Pursuant to Federal Rule of Civil Procedure 23, Plaintiff seeks certification of the following Classes (or alternative Classes or Subclasses), for the time period from when the Children's Robitussin products first entered into the stream of commerce until the present ("Class Period"), as defined as follows:

**The Nationwide Class is defined as follows**:

All U.S. citizens who purchased the Children's Robitussin products in their respective state of citizenship for personal and household use and not for resale during the Class Period.

**The California Subclass is defined as follows**:

All California citizens who purchased the Children's Robitussin products in California for personal and household use and not for resale during the Class Period.

73.    The Classes and Subclasses described in this complaint will jointly be referred to as the "Class" or the "Classes" unless otherwise stated, and the proposed members of the Classes and Subclasses will jointly be referred to as "Class Members."

74.    Plaintiff and the Class reserve their right to amend or modify the Class definitions with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

75.    Excluded from the Class are governmental entities, Defendant, any entity in which Defendant has a controlling interest, Defendant's employees, officers, directors, legal representatives, heirs, successors and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the judicial officers, their immediate family members and court staff assigned to this case.

76.    The members in the proposed Class are so numerous that individual joinder of all members is impracticable. Due to the nature of the trade and commerce involved, however, Plaintiff believes the total number of Class members is at least

in the hundreds and members of the Classes are numerous.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

77.   Pursuant to Rule 23(b)(2), Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making final injunctive relief or corresponding declaratory relief and damages as to the Products appropriate with respect to the Classes as a whole.  In particular, Defendant has failed to disclose the true nature of the Products being marketed as described herein.

78.   There is a well-defined community of interest in the questions of law and fact involved, affecting the Plaintiff and the Classes and these common questions of fact and law include, but are not limited to, the following:

a.   Whether Defendant breached any express warranties made to Plaintiff and the Class;

b.   Whether Defendant breached any implied warranties made to Plaintiff and the Class;

c.   Whether Defendant violated other consumer protection statutes, false advertising statutes, or state deceptive business practices statutes;

d.   Whether Defendant engaged, and continues to engage, in unfair or deceptive acts and practices in connection with the marketing, advertising, and sales of the Products;

e.   Whether reasonable consumers are likely to be misled by Defendant's advertising and labeling of the Products;

f.   Whether the Products' challenged representations or omissions are material to reasonable consumers;

g.   Whether the proposed class is suitable for class certification;

h.   The proper amount of restitution, damages, and punitive damages;

i.      The proper injunctive relief, including a corrective advertising campaign;

j.      The proper amount of attorneys' fees.

79.     These common questions of law and fact predominate over questions that affect only individual Class Members.

80.     Plaintiff's claims are typical of Class Members' claims because they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct. Specifically, all Class Members, including Plaintiff, were subjected to the same misleading and deceptive conduct when they purchased the Products, and suffered economic injury because the Products were and still are misrepresented. Absent Defendant's business practice of deceptively and unlawfully labeling the Products, Plaintiff and Class Members would not have purchased the Products, or would have paid less for them.

81.     Plaintiff will fairly and adequately represent and protect the interests of the Classes, has no interests incompatible with the interests of the Classes, and has retained counsel with substantial experience in handling complex consumer class action litigation. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.

82.     Plaintiff and the members of the Classes suffered, and will continue to suffer harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Classes is impracticable. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair

and efficient handling of all Class members' claims in a single forum.  The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class members.  Furthermore, for many, if not most, a class action is the only feasible mechanism that allows an opportunity for legal redress and justice.

83.   Adjudication of individual Class members' claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other class members to protect their interests.

84.   Defendant has acted on grounds applicable to the Class, thereby making appropriate final public injunctive and declaratory relief concerning the Class as a whole.

85.   As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(b)(2) and 23(b)(3).

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Violations of the Unfair Competition Law,**

**Cal. Bus. & Prof. Code §§ 17200 *et seq.***

**(*on behalf of the California Class*)**

86.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

87.   California's Unfair Competition Law, Business and Professions Code §17200 (the "UCL") prohibits any "unfair, deceptive, untrue or misleading advertising."  For the reasons discussed above, Defendant has engaged in unfair, deceptive, untrue and misleading advertising, and continues to engage in such business conduct, in violation of the UCL.

88.   California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*, proscribes acts of unfair competition, including "any unlawful,

24

unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

### **Fraudulent**

89.     A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test.

90.     As set forth herein, Defendant's claims relating to the Products are likely to mislead reasonable consumers to believe the Products are specially formulated for children or otherwise uniquely suitable for children.

91.     Defendant's conduct caused and continues to cause substantial injury to Plaintiff and the other Class members.  Plaintiff has suffered injury in fact as a result of Defendant's unfair conduct.  Defendant has thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiff and the Class to public injunctive relief against Defendant, as set forth in the Prayer for Relief.

92.     Pursuant to Business and Professions Code § 17203, Plaintiff and the Class seek an order requiring Defendant to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendant to engage in a corrective advertising campaign.

93.     Plaintiff also seeks an order for the disgorgement and restitution of the premium received from the sale of the Products the Class Members purchased, which was unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition, and attorneys' fees and costs.

### **Unlawful**

94.     The acts alleged herein are ''unlawful'' under the UCL in that they violate at least the following laws:

a.     By knowingly and intentionally concealing from Plaintiff and the other Class members that the Products were not specially formulated for children;

b.     By misrepresenting the nature of the Products as being specially

formulated for children or otherwise uniquely suitable for children;

     c.     By engaging in the conduct giving rise to the claims asserted in this complaint;

     d.     By violating California Civil Code §§ 1709-1711 by making affirmative misrepresentations about the Products;

     e.     By violating California Civil Code §§ 1709-1711 by suppressing material information about the Products;

     f.     By violating the California Commercial Code for breaches of express and implied warranties.

     g.     By violating California's Sherman Act, Cal. Health & Safety Code § 110390, which prohibits drug and cosmetics labelling that is "false or misleading in any particular";

     h.     By violating the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*; and

     i.     By violating the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*

     95.     Such conduct is ongoing and continues to this date.

     96.     Plaintiff and the Class reserve the right to allege other violations of law, which constitute other unlawful business acts or practices.

## Unfair

     97.     Defendant's acts, omissions, misrepresentations, practices and nondisclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  In the alternative, Defendant's business conduct as described herein violates relevant laws designed to protect consumers and business from unfair competition in the marketplace.  Such conduct is ongoing and continues

CLASS ACTION COMPLAINT

to date.

98.  Defendant's conduct with respect to the labeling, advertising, and sale of the Products were and is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the Consumers Legal Remedies Act, the False Advertising Law, and portions of the California Sherman Food, Drug, and Cosmetic Law.

99.  Defendant's conduct with respect to the labeling, advertising, and sale of the Products were and is also unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves could reasonably have avoided.

100.  Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

101.  Plaintiff and Class Members are likely to continue to be damaged by Defendant's deceptive trade practices, because Defendant continues to disseminate misleading information on the Products' packaging. Thus, public injunctive relief enjoining Defendant's deceptive practices is proper.

102.  There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

103.  Classwide reliance can be inferred because Defendant's misrepresentations were material, *i.e.*, a reasonable consumer would consider them important in deciding whether to buy the Children's Robitussin products.

104.  Defendant's misrepresentations were a substantial factor and proximate cause in causing damages and losses to Plaintiff and Class members.

105.  Plaintiff and the Classes were injured as a direct and proximate result of Defendant's conduct because (a) they would not have purchased or would have paid less for the Children's Robitussin products if they had known the truth and (b) they overpaid for the Products because the Products are sold at a price premium due to the misrepresentations.

CLASS ACTION COMPLAINT

## SECOND CAUSE OF ACTION

### Violations of the False Advertising Law,

### Cal. Bus. & Prof. Code §§ 17500 *et seq.*

### (*on behalf of the California Class*)

106. Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

107. The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

108. It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

109. As alleged herein, Defendant falsely advertised the Children's Robitussin products by falsely representing that the Products were specifically formulated for children and safer for consumption by children, when in fact the Products are identical to the Adult's Robitussin products.

110. Plaintiff has standing to pursue this claim as Plaintiff has suffered injury in fact as a result of Defendant's actions as set forth herein. Specifically, prior to the filing of this action, Plaintiff purchased the Products in reliance on Defendant's false and misleading labeling claims that the Products, among other things, were specially formulated for children or otherwise uniquely suitable for children.

111. Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its

1  advertising.

2  112.   Defendant profited from its sale of the falsely and deceptively

3  advertised Products to unwary consumers.

4  113.   As a result, Plaintiff, the Class, and the general public are entitled to

5  public injunctive and equitable relief, restitution, and an order for the disgorgement

6  of the funds by which Defendant was unjustly enriched.

7  114.   Pursuant to Cal. Bus. & Prof. Code § 17535, Plaintiff, on behalf of

8  herself and the Class, seeks an order enjoining Defendant from continuing to engage

9  in deceptive business practices, false advertising, and any other act prohibited by

10  law, including those set forth in this Complaint.

## THIRD CAUSE OF ACTION

### Violations of the Consumer Legal Remedies Act,

### Cal. Civ. Code §§ 1750 *et seq*.

### (*on behalf of the California Class*)

15  115.   Plaintiff realleges and incorporates the allegations elsewhere in the

16  Complaint as if set forth in full herein.

17  116.   The CLRA prohibits deceptive practices in connection with the conduct

18  of a business that provides goods, property, or services primarily for personal,

19  family, or household purposes.

20  117.   Defendant's false and misleading labeling and other policies, acts, and

21  practices were designed to, and did, induce the purchase and use of the Products for

22  personal, family, or household purposes by Plaintiff and Class Members, and

23  violated and continue to violate the following sections of the CLRA:

24  a.   § 1770(a)(5): Representing that goods have characteristics, uses, or

25  benefits which they do not have;

26  b.   § 1770(a)(7): Representing that goods are of a particular standard,

27  quality, or grade if they are of another;

28  c.   § 1770(a)(9): Advertising goods or services with intent not to sell them

as advertised; and

d.      § 1770(a)(16): Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

118.    Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

119.    Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

120.    On February 2, 2023, Plaintiff sent a notice letter to Defendant's principal place of business which complies with California Civil Code § 1782(a). Plaintiff sent Defendant individually and on behalf of the proposed Class, a letter by certified mail, return receipt requested, demanding that Defendant rectify the actions described above by providing monetary relief, agreeing to be bound by its legal obligations, and giving notice to all affected customers of its intent to do so. A copy of Plaintiff's February 2, 2023 CLRA letter is attached hereto as **Exhibit 1**.

121.    If Defendant does not take the corrective action described in Plaintiff's CLRA letter within 30 days, Plaintiff will amend this complaint to include a claim for damages. Until such time, this complaint seeks only injunctive relief for Defendant's violations of the CLRA and not damages under §§ 1770 and 1782.

## **FOURTH CAUSE OF ACTION**
### **Breach of Express Warranties,**
### **Cal. Com. Code § 2313(1)**
### (*on behalf of all Classes*)

122.    Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

123.    Through the Products' labels and advertising, Defendant made affirmations of fact or promises, or description of goods, described above, which were "part of the basis of the bargain," in that Plaintiff and the Class purchased the Products in reasonable reliance on those statements. Cal. Com. Code § 2313(1).

124.   The foregoing representations were material and were a substantial factor in causing the harm suffered by Plaintiff and the Class because they concerned alleged valuation of the Products regarding its suitability for children.

125.    These representations had an influence on consumers' decisions in purchasing the Products.

126.   Defendant made the above representations to induce Plaintiff and the members of Class to purchase the Products. Plaintiff and the Class members relied on the representations when purchasing Defendant's products.

127.   Defendant breached the express warranties by selling Products that were marketed as specially formulated for children or otherwise uniquely suitable for children, when in fact, the Products were identical to the adult's Robitussin products.

128.   That breach actually and proximately caused injury in the form of the price premium that Plaintiff and Class members paid for the Products.

## FIFTH CAUSE OF ACTION
### Breach of Implied Warranties,
### Cal. Com. Code § 2314
### (*on behalf of all Classes*)

129.   Plaintiff realleges and incorporates the allegations elsewhere in the Complaint as if set forth in full herein.

130.   Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Products, made representations to Plaintiff and the Class that, among other things, the Products were specially formulated for children or otherwise uniquely suitable for children.

131.   Plaintiff and the Class bought the Products manufactured, advertised, and sold by Defendant, as described herein.

132.   Defendant is a merchant with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was, in the sale to Plaintiff and other

31

consumers, an implied warranty that those goods were merchantable.

133.   However, Defendant breached that implied warranty in that the Products were not specially formulated for children, and instead, were identical to the adult's Robitussin products.

134.   As an actual and proximate result of Defendant's conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that the Products did not conform to promises and affirmations made on the container or label of the goods.

135.   Plaintiff and Class Members sustained damages as a proximate result of the foregoing breach of implied warranty in the amount of the Products' price premium.

**SIXTH CAUSE OF ACTION**

**Negligent Misrepresentation**

**(*on behalf of all Classes*)**

136.   Plaintiff and the Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

137.   Defendant had a duty to disclose to Plaintiff and Class Members correct information as to the quality and characteristics of the Products because Defendant was in a superior position than Plaintiff and Class Members such that reliance by Plaintiff and Class Members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

138.   During the applicable Class period, Defendant negligently or carelessly misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Products, including that the Products were specially formulated for children or otherwise uniquely suitable for children.

139.   Defendant made such false and misleading statements and omissions with the intent to induce Plaintiff and Class Members to purchase the Products at a

premium price.

140.   Defendant was careless in ascertaining the truth of its representations in that it knew or should have known that Plaintiff and Class Members would be overpaying for products that were identical to lower-priced products.

141.   Plaintiff and the Class Members were unaware of the falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

142.   Plaintiff and the Class Members would not have purchased the Products or paid as much for the Products if the true facts had been known.

## SEVENTH CAUSE OF ACTION

### Intentional Misrepresentation/Fraud

### (*on behalf of all Classes*)

143.   Plaintiff and the Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

144.   Defendant had a duty to disclose to Plaintiff and Class Members correct information as to the quality and characteristics of the Products because Defendant was in a superior position than Plaintiff and Class Members such that reliance by Plaintiff and Class Members was justified. Defendant possessed the skills and expertise to know the type of information that would influence a consumer's purchasing decision.

145.   During the applicable Class period, Defendant intentionally misrepresented, omitted, and concealed from consumers material facts regarding the quality and characteristics of the Products, including that the Products were specially formulated for children, safer to consume for children, or otherwise uniquely suitable for children. These representations were material and were uniformly made.

146.   As noted in detail above, these representations were false and misleading, as the Children's Robitussin Products are identical to the adult's Robitussin products. Defendant made these misrepresentations with actual

knowledge of their falsity and/or made them with fraudulent intent.

147.   Defendant made such false and misleading statements and omissions with the intent to induce Plaintiff and Class Members to purchase the Products at a premium price, deprive Plaintiff and Class Members of property or otherwise causing injury, and thus, Defendant has committed fraud.

148.   Defendant's deceptive or fraudulent intent is evidenced by motive and opportunity. Defendant offered products that were marketed and advertised as specially formulated for children so Defendant could realize greater profits by requiring consumers to purchase two separate products: one for children and one for adults. Defendant also knew that children required a smaller dose of the Products than adults and therefore cough relief products purchased for children would be purchased at a slower rate than cough relief products purchased for adults. For that reason, Defendant offered products that were marketed and advertised as specially formulated for children so Defendant could realize greater profits irrespective of whether consumers intended to purchase Robitussin products for children or adults. Defendant knew that consumers would place trust and confidence in its Products' claims and rely thereon in their purchases of the Products. In addition to Defendant's knowledge that the Products were not specially formulated for children and were not otherwise uniquely suitable for children, Defendant expressly represented that the Children's Products were more suitable for children to consume and superior to the adult's Robitussin products when purchasing for children, and generated great profit by instilling confidence in its consumer base that its claims were credible.

149.   Plaintiff and the Class Members were unaware of the falsity in Defendant's misrepresentations and omissions and, as a result, justifiably relied on them when making the decision to purchase the Products.

150.   As a proximate result of Defendant's intentional misrepresentations, Plaintiff and the Class were induced to purchase the Products at a premium.

151.   Plaintiff and the Class Members would not have purchased the Products

or paid as much for the Products if the true facts had been known.

152.   As a result of their reliance, Plaintiff and Class Members were injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase.

153.   Defendant's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and Class Members. Plaintiff and Class Members are therefore entitled to an award of punitive damages.

## EIGHTH CAUSE OF ACTION

### Quasi-Contract/ Unjust Enrichment

### (*on behalf of all Classes*)

154.   Plaintiff and the Class Members re-allege and incorporate by reference each and every allegation set forth above, and further allege as follows:

155.   As alleged in detail above, Defendant's false and misleading labeling caused Plaintiff and the Class to purchase the Children's Robitussin products at a premium.

156.   In this way, Defendant received a direct and unjust benefit, at Plaintiff and the Class's expense.

157.   It would be unjust and inequitable for Defendant to retain the above-mentioned benefits. For example, Defendant was only able to charge a premium for the Children's Robitussin products by intentionally withholding information from Plaintiff, or otherwise misrepresenting the Products' qualities.

158.   Plaintiff and the Class seek restitution.

## VI.   PRAYER FOR RELIEF

159.   Wherefore, Plaintiff, on behalf of herself, all others similarly situated, and the general public, prays for judgment against Defendant as to each and every cause of action, including:

a.   An order certifying this action as a class action pursuant to Federal Rules

of Civil Procedure 23(b)(1), 23(b)(2), and/or 23(b)(3);

b.    An order maintaining this action as a class action and/or an order maintaining a particular issue class action pursuant to Federal Rule of Civil Procedure 23(c)(4);

c.    An order requiring Defendant to bear the costs of class notice;

d.    An order appointing Plaintiff as the class representative and the Law Offices of Ronald A. Marron as Class Counsel;

e.    An order compelling Defendant to conduct a corrective advertising campaign;

f.    An order compelling Defendant to destroy all misleading and deceptive advertising materials and Products labels, and to recall all offending Products;

g.    An order awarding disgorgement of Defendant's profits that were obtained from its ill-gotten gains in connection with its sales of the Products to Plaintiff and the class members;

h.    An order awarding restitution in the amount of the price premium paid by the class members for the Products;

i.    An award for punitive damages;

j.    An award of attorneys' fees and costs; and

k.    An order providing for all other such further relief as may be just and proper.

## **<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 3, 2023          Respectfully Submitted,


                                 /s/ *Ronald A. Marron*
                                 Ronald A. Marron

**LAW OFFICES OF RONALD A. MARRON**
RONALD A. MARRON
*ron@consumersadvocates.com*
MICHAEL T. HOUCHIN
*mike@consumersadvocates.com*
LILACH HALPERIN
*lilach@consumersadvocates.com*
651 Arroyo Drive
San Diego, California 92103
Telephone: (619) 696-9006
Facsimile: (619) 564-6665
***Counsel for Plaintiff and the Proposed Classes***

CLASS ACTION COMPLAINT