# Exhibit B

Exhibit B

```
 1                UNITED STATES DISTRICT COURT

 2               CENTRAL DISTRICT OF CALIFORNIA

 3                     WESTERN DIVISION

 4                          ---

 5        HONORABLE ANDRE BIROTTE, JR., JUDGE PRESIDING

 6                          ---

 7

 8   TASHAUNA SEALE,           )
                               )
 9              Plaintiff,     )
                               )
10                             )
        vs.                    ) NO:  CV 23-00842-AB
11                             )
                               )
12   GSK CONSUMER HEALTH, INC., )
                               )
13              Defendant.     )
     _____)
14

15

16

17           REPORTER'S TRANSCRIPT OF PROCEEDINGS

18                 Los Angeles, California

19                  Friday, May 26, 2023

20

21

22                      KATHERINE M. STRIDE, RPR, CSR
                        Official Court Reporter
23                      United States District Court
                        350 W. 1st Street, Rm. 4455
24                      Los Angeles, California  90012

25                      (213)894-2979
```

Exhibit B

```
1

2    APPEARANCES:

3    In behalf of the Plaintiff:

4                 MICHAEL T. HOUCHIN, ESQ. (VIA ZOOM)
                  LAW OFFICE OF RONALD MARRON
5                 651 Arroyo Drive
                  San Diego, CA  92103
6                 (619) 696-9006
                  E-mail: mike@consumersadvocates.com
7

8
     In behalf of Defendant:
9
                  CHRISTINA G. SARCHIO, ESQ. (VIA ZOOM)
10                PRO HAC VICE
                  DECHERT LLP
11                1900 K Street, NW
                  Washington, DC  20006
12                (202) 261-3465
                  E-mail: christina.sarchio@dechert.com
13

14                FRIEDRICH W. SACHSE, ESQ. (VIA ZOOM)
                  DECHERT LLP
15                2929 Arch Street
                  Philadelphia, PA  19104
16                (215) 994-2496
                  E-mail: will.sachse@dechert.com
17

18                KENNETH MAECHTLEN COCHRAN, ESQ. (VIA ZOOM)
                  DECHERT LLP
19                633 West 5th Street, Suite 4900
                  Los Angeles, CA  90071
20                (213) 808-5700
                  E-mail: kenny.cochran@dechert.com
21

22

23

24

25
```

Exhibit B

1          **LOS ANGELES, CALIFORNIA; FRIDAY, MAY 26, 2023;**

2                          **10:40 A.M.**

3

4          THE CLERK:  Calling No. 4, CV 23-842, *Tashauna*

5   *Seale vs. GSK Consumer Health, Inc.*

6          Counsel, state area appearances.

7          MR. HOUCHIN:  Good morning, Your Honor.

8   Michael Houchin on behalf of Plaintiff.

9          THE COURT:  Good morning.

10          MR. COCHRAN:  Good morning, Your Honor.  This

11   is Kenneth Cochran on behalf of the Defendant, and I'm

12   joined by my colleagues, Christine Sarchio and Wil

13   Sachse.

14          MR. SACHSE:  Good morning.

15          THE COURT:  All right.  Good morning.  And for

16   what it's worth, I think Mr. Cochran and I have a long

17   and tortured history from I think -- was it two years

18   ago, or was it longer?

19          MR. COCHRAN:  I believe it would be three years

20   ago at this point, Your Honor.

21          THE COURT:  Okay.  Just with my age, my

22   memory's starting to fade.  So for -- for what it's

23   worth, I do appreciate the fact that the firm has

24   allowed someone of Mr. Cochran's stature and tenure to

25   argue cases like this.  I was just at an A.B.A. panel

1    discussion the other day, and I think most judges are

2    lamenting at the fact that younger lawyers or less

3    seasoned lawyers are not getting the opportunity to

4    argue cases, and so I appreciate that.

5         This is a very interesting case, to say the

6    least, about children's medicine, and as the parent of

7    teenagers, I now look a lot more closely at child -- or

8    medicines as I'm at the store during -- during the cold

9    and flu season.

10        All right.  I've got a number -- I've got some

11   questions that I want to ask.  I'll start with the

12   Plaintiff if I could.

13        So is it Mr. Houchin?

14        MR. HOUCHIN:  Yes, that's correct, Your Honor.

15        THE COURT:  So let me ask you:  If the F.D.A.

16   approves this product for use with children, okay, how

17   it misleading for the packaging to indicate that the

18   product can be used by kids?

19        MR. HOUCHIN:  Well, Your Honor, I think the

20   regulations contemplate that there could be a children's

21   product or there could be an adult product and could be,

22   you know, just one product that has dozing instructions

23   for both children and adults, and the dosing

24   instructions on this particular product does have those

25   weird label instructions on the children's products

1    where there's adult dosing instructions and children

2    dosing instructions, and so we're challenging the front

3    label representations where it says children as the

4    cartoon characters and says it's, you know, ages 4+.

5         THE COURT:  But isn't that accurate, though?  I

6    mean it is for people -- for humans 4+; isn't it?

7         MR. HOUCHIN:  Yeah, that's -- that's accurate,

8    and we're not disputing, you know, that it's safe for

9    children to take the product.  Children can, in fact,

10   take the product.  What we're challenging is that they

11   don't disclose that the children's product is the same

12   product as the adult product, and we're not requiring a

13   specific disclosure, but what's misleading is that, you

14   know, they have these front-label misrepresentations,

15   where, like I said, there's cartoon characters, and it

16   makes it seem like the product's specifically formulated

17   for children, which, in fact, it is the same as the

18   adult product.

19        THE COURT:  So are you -- are you looking for

20   some sort of disclosure, then?

21        MR. HOUCHIN:  No, no.  We're not looking for

22   any type of like affirmative label disclosure.

23        THE COURT:  What are you looking for?  You

24   want -- you want something like a neon sign that says,

25   by the way, the ingredients are the same in the adult.

1    Go buy the adult one.

2         MR. HOUCHIN:  Well, like I said, it's -- we're

3    not specifically looking for a disclaimer on the

4    packaging of the product.  What we want is, you know,

5    remedies and association with the misleading statements

6    that the product's specifically formulated for children

7    when, in fact, it's not, and so that -- you know, that

8    would be, you know, monetary damages.

9         THE COURT:  But, again, I come back to sort of

10   my original question, and I'm struggling.  Look.  I'm

11   going to give you a hard time just like I'm going to

12   give Mr. Cochran a hard time in the interest of full

13   disclosure.  I mean the F.D.A. approved the product for

14   children, and -- and my concern -- I guess my thought in

15   thinking about this is that, if I adopt your theory,

16   does that mean that any -- I mean you could make up any

17   lawsuit basically regardless of an F.D.A. approval and

18   just say it's misleading when there's a regulatory

19   agency that presumably reviewed it and they put their

20   stamp of approval, wrong or right.  So the company says

21   this is approved for kids.  So we're going to market it

22   as such.

23        MR. HOUCHIN:  Well, I'm not sure that the

24   F.D.A. specifically approved the label.  I mean, it

25   follows the F.D.A. approved monograph.

1          THE COURT:  Well, I'm sorry.  I may have

2     misspoke.  I didn't mean they approved the label.  They

3     approved the product for children; right?

4          MR. HOUCHIN:  Correct, with the monograph.

5          THE COURT:  Okay.

6          MR. HOUCHIN:  Yes.  So, I mean, this is -- this

7     is a case like many others that have survived a Motion

8     to Dismiss.  The _DiGiacinto_ case, the _Burchfield_ case,

9     the _McFall_ case, the _Elkies_ case -- all those cases say

10    that, you know, these representations that the

11    children's product is the same as the adult product is

12    likely to mislead reasonable consumers, and so I think

13    the Court should follow those lines of cases here since

14    it's the same alleges.

15         THE COURT:  Okay.  And let me shift if I could.

16    Section 341.74 talks about children's specific labeling

17    requirements.  Okay.  You say you're not looking for

18    disclosure, but aren't you trying to impose a

19    requirement that you can't label something as being

20    children's if it has the same pharmacological makeup

21    with the adult version?

22         MR. HOUCHIN:  Yeah.  So there's nothing in the

23    regulations that specifically requires a children's

24    product, and I think that the CFR statute or the

25    regulation that you cited, it actually contemplates that

1    there could be one product for both adults and children,

2    and so that would have dosing instructions for an adult

3    and dosing instructions for a child, but it's the same

4    product.

5           Here's what they did, is they created a whole

6    separate product that's marketed specifically for

7    children, but it's the same composition as the adult

8    product, and that's what we're challenging is being

9    misleading.

10          THE COURT:  Okay.  And then, you know, related

11   to that -- you know, as part of your misrepresentation

12   cause of action you say that -- that the Defendants in

13   this case failed to make disclosure as to the quality

14   and the characteristics of the product.  Okay.  But I

15   keep coming back to what disclosures do you contend were

16   required?  Is it -- is it that it's the same as the

17   adult?  That's what I'm struggling with.  That's why I

18   keep coming back.  Are you asking for disclosures or not

19   because I think it's on paragraph 206 where you say they

20   fail to make disclosures as to the quality and

21   characteristics of the product.  To me, that's

22   suggesting they should make disclosures.  So am I

23   missing something there?

24          MR. HOUCHIN:  Yes.  So we're not asking them to

25   change the label in any way that, you know, would

1   conflict with F.D.A. regulations.  So I know in the

2   *Youngblood* case, the Court found that there was

3   preemption on the Plaintiff's Complaint and specifically

4   asked for disclosure saying that the children's product

5   is the same formulation as the adult product, but that's

6   not necessarily what we're asking for here.  What we're

7   saying is the omitted information, and we're not saying

8   they were specifically required to disclose it, but they

9   made affirmative misrepresentations by stating that it's

10  a children's product when, in fact, it's the same as the

11  adult's product.

12          THE COURT:  So I guess in that vein what are

13  you asking for because it strikes me that one might say

14  there's only two options, they stop selling the product,

15  okay, so that, you know, consumers won't buy the

16  children's product and just buy the adult one or they're

17  required to put some sort of disclaimer, which I worry

18  might be contradictory -- that would contradict federal

19  regulations.

20          MR. HOUCHIN:  Yeah, I see a third option, which

21  is really what we're asking for here, and that would be

22  removing the misleading labeling that's not specifically

23  authorized by the F.D.A., which would be the cartoon

24  characters, the statement for children.  I mean, it

25  could be the same product with dosing instructions for

1    children and adults.  There's nothing in the regulations

2    that require them to put these extra label statements

3    about for children and the cartoon characters, and so

4    that's really what we're challenging here.  We're not

5    looking for a specific disclaimer on the packaging like

6    in the --

7                THE COURT:  But, again, if you remove the teddy

8    bear or what have you, then it's just an adult product;

9    right?

10               MR. HOUCHIN:  Yeah, I mean, they're the same

11   product.  I mean there's nothing in the regulations that

12   it requires them to sell a separate children's product,

13   but that's what they decided to do here.

14               THE COURT:  Okay.  Okay.  All right.  Let me

15   shift over to Mr. Cochran, who's standing over at

16   attention over there.

17               And my apologies, Ms. Sarchio, I didn't

18   realize -- I forgot you're in D.C.  So good afternoon to

19   you.

20               So, Mr. Cochran, let me just ask you:  It's the

21   same product; right?

22               MR. COCHRAN:  Correct, Your Honor, it is

23   pharmalogically alike.  It is not actually the same

24   product.

25               THE COURT:  What's different?

1    MR. COCHRAN:  Well, Your Honor, the regulations

2    pertaining to each product are significantly different,

3    and those are set by the F.D.A., and as Your Honor

4    mentioned, our client has no discretion to depart from

5    those very specific requirements.  So if you look at the

6    rear label, for instance, there are very specific dosage

7    requirements that are specific to children and --

8    THE COURT:  But those dosage requirements --

9    and forgive me.  I'm getting them -- I may be getting

10   some of the products confused, but I thought the dosage

11   requirements on the back of -- it's not the Elderberry.

12   I think it's the cough syrup.  I'm trying to find it.

13   Weren't those dosage requirements or instructions

14   identical?

15   MR. COCHRAN:  No, Your Honor.  There are very

16   specific requirements that depends on the age of the end

17   user, and so a product that's specific -- and, again,

18   there's several products that are listed in the

19   Compliant, and each product that is sold to -- consumers

20   of a certain age group has to comply with very specific

21   regulations, and that's in addition to the products that

22   are not identical due to the dosage cups, which actually

23   directly speak to Your Honor's question that the dosages

24   are different as between different age groups.

25   THE COURT:  Age groups, but -- and I'm sorry.

1    I thought there was an exhibit that shows the back of

2    the two products, and the instructions were the same,

3    like it said 0 to 4, this amount; 4 to 12 -- bear with

4    me.  Of course when I need it, I can't find it.  Hold on

5    a second.

6            MR. HOUCHIN:  Your Honor, if I may, I'm -- I'm

7    familiar with what your question is now.  So, because

8    the adult products are appropriate for a wide age range,

9    which is described on the front label, there are several

10   different instructions depending on which age range is

11   being taken.

12           THE COURT:  Right.

13           MR. COCHRAN:  So I believe that's what

14   Your Honor is referring to.

15           THE COURT:  Right.  And I'm sorry.  I found it

16   now.  The Complaint -- in the Complaint on page -- I

17   guess it's paragraph 27, starting on page 10, going to

18   page 11, if you look at the Children's Robitussin

19   12-hour cough relief, and I'll just call it the adult

20   one, the directions are identical.  I mean -- and so

21   that's what makes me wonder aren't they just the same?

22   I know the Elderberry one is different, I think.  Yeah,

23   and that's on paragraph 40, you know, and so, when I

24   look at the children's - I mean, the Robitussin 12-hour

25   cough relief, isn't the -- the products are identical in

1   every way except one says it's for children and one says

2   it doesn't; right?

3           MR. COCHRAN:  Your Honor, I'm pulling up the

4   portion of the Complaint.

5           THE COURT:  Yeah, so it's on page 11 of the

6   Complaint, just above paragraph 28, and I'm talking

7   specifically about Children's Robitussin -- I'm sorry --

8   Robitussin 12-hour cough relief.  There's a children's

9   directions, and then, again, I'll call it the adult.

10  They are, at least as far as I can tell, identical,

11  and -- and -- and, to me, if I see the backs of those

12  and they're identical, one could argue that it is

13  misleading, but you have children's on one and adult on

14  the other, and it's identical.

15          And I'll tell you, for whatever it's worth, I

16  just remember, when I was first looking at the case, in

17  my mind I was thinking of something slightly different

18  where I think -- and I didn't last night, but maybe I

19  should this weekend -- I seem to recall, for example,

20  with children's Claritin versus adult Claritin.  The --

21  the pharmacological makeup is the same.  It consists of

22  the same product, but the dosage amount is different,

23  and I'm making this up.  Whatever is contained in

24  Claritin -- when you buy children's Claritin, it will

25  contain .5 verses the adult is 1.0.  But, here, there is

1    nothing different at all and, in fact, what I found

2    interesting is that they -- they both contain directions

3    that are identical, and I would -- it would be one

4    thing, at least for my mind, if the children's one

5    said -- had only children's instructions and the adult

6    had only adult, but they are both identical.  So it is

7    pretty misleading because, if they're the same, I don't

8    need to buy the children's one.  I can just go buy the

9    adult one and just look at the dosage amount and just

10   dose, for my kids four to six, I do 2.5 milliliters

11   every 12 hours and don't exceed 5 milliliters because

12   the instructions are the same on both.  And I recognize,

13   I'm sure, because of our field and our practice, your

14   client put them both there to avoid a different type of

15   litigation, but as it relates to this, if you're looking

16   at both of them, what is the difference?  Is there

17   really a difference between children's versus

18   non-children's?

19          MR. COCHRAN:  Also, Your Honor, I want to be

20   very clear.  We're talking about two -- two separate

21   inquires, what you were discussing with Plaintiff's

22   Counsel is a preemption inquiry, and -- and with respect

23   to that, all of this discussion is irrelevant in my

24   opinion.  With respect to whether or not something could

25   be potentially misleading, Your Honor, there are other

1    cases where these same facts have been presented, and

2    those cases have held that that is not a -- a

3    misleading label, just the fact that something is

4    labeled accurately, that it's safe for children and

5    another product is labeled accurately that it's safe for

6    both children and adults.  So while the instance that

7    you pointed out, these are identical products in those

8    respects, that's not -- there's nothing -- as I think

9    Plaintiff Counsel just admitted, there's nothing that's

10   not accurate that's on the label.  They very clearly

11   say, consistent with F.D.A. regulations, that this is a

12   product that's safe for children; and, conversely, it's

13   safe for both children and adults.

14        And so respectfully, Your Honor, I don't

15   believe that there's anything inaccurate on either

16   label, but even if there was, that's an inquiry that's

17   separate and apart from whether or not the claims are --

18   are preempted under federal law.

19        THE COURT:  Right.  And that's a different --

20        MR. COCHRAN:  And which may not reach the

21   reasonable consumer standard because preemption takes

22   care of the whole case.

23        THE COURT:  No, and I get that.  Like I told

24   Mr. Houchin, I'm going -- I'm going to probe -- I'm

25   going to be equally challenging you.  I recognize

```
 1    there's a preemption.  The heart of their Complaint is

 2    basically, yes, it's accurate but -- and maybe you're

 3    not -- you can answer this:  Isn't it a little

 4    misleading?  I mean it's accurate, but you're putting a

 5    children's stamp on something that there's no

 6    difference.  I mean, if -- if -- if someone went to the

 7    non-children's section of CVS and bought 12-hour

 8    Robitussin and they abided by the directions, they would

 9    be treating that child as effectively as if they had

10    bought the children's version.

11           Do you disagree with that?

12           MR. COCHRAN:  I think that is a reasonable

13    interpretation, Your Honor.  I also think that consumers

14    might well prefer that there be a children's moniker to

15    make sure that they are -- that they are comforted that

16    the product is safe for children.

17           THE COURT:  But the adult one is also safe for

18    children; isn't it?

19           MR. COCHRAN:  It is as to the specified dosage

20    on the back of the label.  And, you know, with respect

21    to the product that you pointed out, yes, they are --

22    the back labels are identical, and they're -- in one

23    product, there is a child-specific dosing cup is one

24    different type to point out, but I don't dispute

25    Your Honor that your hypothetical is not unreasonable,
```

1    but I do think that there is no -- there's no

2    inaccuracies on the label, and consumers very -- very

3    well may prefer that there be that clear children's

4    label to inform them that this is, in fact, safe for

5    their child.

6            THE COURT:  And do you think that consumers

7    prefer -- prefer that so much that they're willing to

8    pay more money for that because isn't the children's one

9    more expensive than the adult one?

10           MR. COCHRAN:  Well, this gets into an

11   interesting caveat, Your Honor, in that it's undisputed

12   amongst the parties that the price differential cannot

13   be the source of the deception.

14           THE COURT:  Okay.

15           MR. COCHRAN:  And so what we have here, as

16   Your Honor rightly pointed out, is that you really need

17   those price differential allegations to have any case

18   here.  Under the *Boris* case, which is affirmed by the

19   Ninth Circuit, price differential cannot be the source

20   of the deception in a labeling case, period.

21           THE COURT:  And -- and I think in fairness, I

22   don't -- I mean, it's an interesting point, one that I

23   would think that you would not want to be presented to

24   the jury, but the labeling is the issue here, but I

25   guess I -- I just thought it was interesting that --

1    that it just so happens that the children's one is more

2    expensive.

3            MR. COCHRAN:  Well, what I would say to that,

4    Your Honor, is that my client is the manufacturer of the

5    product.  The purchases were made from retailers that

6    are not a party to this lawsuit, and I know we're on the

7    pleadings, Your Honor, but the allegations as to what

8    specific retailers might say has nothing to do with the

9    manufacturer -- what prices the manufacturer might

10   recommend, and there's nothing -- there's no allegation

11   that any decision that my client made was, you know, the

12   reason that this Plaintiff allegedly purchased a

13   children's product for more than its corresponding adult

14   product.  So I don't think that's -- first of all, I

15   don't think that's a relevant consideration here, but

16   even if we want to talk about damages, which I don't

17   think was a grounds that we raised in our motions to

18   dismiss, that's certainly not something that can be

19   attributed to my client here.

20           THE COURT:  Okay.  Fair enough.  Fair enough.

21   And so let's talk for a moment about Mr. Houchin's

22   argument that they're just assuming because of the

23   misleading nature of the product.  Okay.

24           What's your response to that?

25           MR. COCHRAN:  Well, I would just point you to

```
 1    the actual allegations in the Complaint, Your Honor.

 2    Plaintiff is saying now in oral argument that there is

 3    no allegation of a disclosure.  I count, I believe,

 4    twelve allegations that expressly seek a disclosure --

 5    allege a failure to disclose, and the -- the relief that

 6    Plaintiff is seeking is actually -- it's seeking a

 7    disclosure under a different name.  They're seeking a

 8    corrective advertising campaign, and I don't know about

 9    you, Your Honor, but I can't fathom a corrective

10    advertising campaign that would seek a disclosure.  By

11    definition, they're asking our client to broadcast to

12    the nation that there is something inaccurate about the

13    product that is, by definition, a disclosure.  So I

14    think that's the first point, that Plaintiff is

15    expressly alleging disclosures of several parts of their

16    Complaint.

17            The second point is, even if they didn't

18    disclose that, the *Carter* case is very clear that it's

19    actually -- it doesn't matter how the Plaintiff styles

20    their relief.  It's the effect that it could actually

21    have on F.D.A. regulations.  So if Plaintiff comes in

22    here and says, "Well, we don't actually seek changes on

23    the labels.  We're just seeking, you know, not to be

24    deceived," the effect of that is, like Your Honor said,

25    either stop selling the products or change the labels.
```

 1    There's no way around it, and this was actually an

 2    argument that was made at the oral argument that's in

 3    the *Youngblood* case before Judge Scarsi.  You know,

 4    despite the Complaint in that case, the Plaintiff, like

 5    Plaintiff is doing here, came in and said, "You know,

 6    we're not actually seeking disclosures.  We're just --

 7    we're just seeking to remedy the misrepresentations on

 8    the label and not being clear about what exactly that

 9    would like."  And Judge Scarsi in that case, relying on

10    his counterparts in the District Court in Illinois said,

11    "No.  It doesn't matter how you phrase the relief you're

12    seeking.  It's very clear that you're seeking to impose

13    labeling requirements that are not identical to federal

14    law.  The case is preempted.  The claims are dismissed

15    with prejudice."

16         So the argument that there's no disclosures

17    that are being sought here is contrary to the Complaint,

18    and even if Plaintiff got -- got creative and tried to

19    amend the Complaint in some way, it -- it simply cannot

20    avoid that the relief sought is expressly presented by

21    federal law.

22         THE COURT:  Okay.  And I'll give you a hard

23    time.  I would hope all my -- all my former clerks will

24    cite me as authority in their future cases.

25         But let me ask another question, Mr. Cochran.

```
1    The standing argument, okay, it seems to me it sort of

2    comes down to a disagreement on whether or not the

3    Plaintiff purchased these products.  At this stage,

4    aren't I supposed to assume that those facts are true?

5    I mean, they alleged that -- she alleged she purchased

6    the product.  Doesn't that sort of end the inquiry?

7              MR. COCHRAN:  No, Your Honor.  Again, I would

8    just point you back to the actual allegations of the

9    Complaint, and I'll give you a little bit of background.

10   So we're obviously here on a first amended Complaint.

11   The Motion to Dismiss before Your Honor is very similar

12   to the Motion to Dismiss that was previously filed.

13             THE COURT:  Right.

14             MR. COCHRAN:  In response to that motion, we

15   received this first amended Complaint, which basically

16   just added -- not basically -- it just added several

17   different dietary supplements that were absent from the

18   first Complaint and were absent from the statutory

19   notice letter, and that's all that was done.  It just

20   added a list of products, and there's one allegation,

21   and I'll just read it:  "Plaintiff is a resident of

22   California and has purchased various adult and children

23   Robitussin products for personal household use and not

24   for resale during the class period including..." -- and

25   then it lists the products.  And, Your Honor, so that is
```

1   the sole allegation alleging purchase of those

2   additional products, and I would respectfully submit

3   that there are more specific allegations that Your Honor

4   can look to that are still part of the first amended

5   Complaint that contradict that very conclusory

6   allegation.

7           THE COURT:  For example.

8           MR. COCHRAN:  That, most notably, is the notice

9   letter that was originally attached to the Complaint and

10  is attached to the first amended Complaint, and in that

11  notice letter, it very specifically says, *"Plaintiff*

12  *purchased Children's Robitussin, Elderberry Cough +*

13  *Chest Congestion DM, and/or Children's Robitussin*

14  *12-hour Cough relief, the products."*

15          And so that -- that notice letter is accepted

16  as an allegation in the Complaint as if it was pled in

17  the Complaint, and I don't think there's any dispute

18  about that.  The exhibits that Plaintiff attached is

19  incorporated into the Complaint, and so even within that

20  sentence, there's a little bit of ambiguity because the

21  Plaintiff is saying "and/or," not committing between

22  those two products, and so you can look back to the

23  Complaint and say what specific allegations are in here

24  about an actual purchase?  And in that same paragraph,

25  Paragraph 15 is the only specific allegation about any

1    purchase of a product, and that's, quote, "Plaintiff

2    most recently purchased the Children's Elderberry

3    product for her child in 2021 or 2022 at a CVS store in

4    Encino, California."  So that's -- Your Honor can -- can

5    credit that specific allegation that I just read about

6    the elderberry product, and then after that, it can

7    credit the second most specific allegation about the

8    elderberry product and the other cold and cough medicine

9    and accepting those two allegations as true, these --

10   these five -- or I'm sorry -- four additional products

11   that are listed in the Complaint have no effect.

12          And, you know, the reason why this is important

13   and the reason why we raised it under 12(f) in addition

14   to 12(b)(1) and 9(b) is that it's very clear that

15   these -- listing these products in a very conclusory

16   fashion in response to a Motion to Dismiss is just an

17   attempt to plead around a preemption defense, and we

18   think the case law supports it, Your Honor, both under

19   9(b), 12(b)(1), and 12(f), that allowing such an

20   opportunistic conclusory pleading practice would

21   effectively prevent the Court from adjudicating claims

22   because, yeah, you know, you're just -- you're just

23   adding products that have no similarity to the products

24   the Plaintiff actually alleges she purchased, and they

25   introduce just a host of different issues including

1   Plaintiff's reliance on the product, what the

2   regulations apply, all of these things, and so if

3   Plaintiff can't even be bothered to -- to give minimal

4   details about what she purchased, when, and, you know,

5   how it deceived her, the Court doesn't have to squint at

6   the Complaint and try to make, you know, unreasonable

7   inferences based off of what the purchases were at

8   issue.

9         So we just respectfully submit that Your Honor

10  does credit Plaintiff's allegation in the Complaint, but

11  that it credit the specific allegation that she

12  purchased only the Children's Elderberry product.

13        THE COURT:  Okay.  Okay.  Let me ask you

14  lastly:  The Plaintiff relies on *Alfred v. Kellogg* and

15  said that we have to accept as true that the label

16  expressly represented the children's product are unique

17  from the adult product in that that expressed warranty

18  is breached.

19        What is your response?

20        MR. COCHRAN:  With respect to the expressed

21  warranty claim?

22        THE COURT:  Right.

23        MR. COCHRAN:  So I do think that the expressed

24  warranty claim is very much tied up and what Your Honor

25  rules on all the other arguments.  I do think that, if

1    Your Honor were to hold that preemption didn't apply,

2    the claim survived 9(b), Plaintiff has standing, and the

3    labels are, in fact, deceiving, than the expressed

4    warranty claim would largely follow those rulings, but

5    I -- I would submit, Your Honor, which is kind of

6    wrapped up in all those allegations that I just

7    mentioned, that there's no warranty here that was --

8    that was breached, and, you know, Plaintiff's expressed

9    warranty claim is effectively parroting elements of an

10   expressed warranty claim and incorporating the same

11   allegations that are submitted in support of her fraud

12   claims.  So, really, all we have is a recitation of the

13   elements of an expressed warranty claim, and, if

14   Your Honor -- you know, Your Honor can't be expected to

15   look over the entire Complaint to -- to identify what

16   the warranty was, how our client breached that warranty,

17   and how that could possibly have caused Plaintiff any

18   damages.  So I would say that that is the argument

19   specifically as to the expressed warranty claim.

20              THE COURT:  All right.  Thank you.

21              Mr. Houchin, I'll give you an opportunity, if

22   you wish, to have the last word, so to speak.

23              Is there anything you wish to say in response

24   to the arguments of counsel?

25              MR. HOUCHIN:  Sure.  I'd like to, first, start

1  with the preemption argument.  There's a couple points I

2  want to make there.  First of all, this argument only

3  applies to -- sorry.  It likes like my video is --

4        THE COURT:  Yeah, it froze, but I can still

5  hear you.

6        MR. HOUCHIN:  Okay.  Yeah, I just wanted to

7  make sure you can hear me.  There it is.

8        Okay.  So this preemption argument only applies

9  to two of the products in the Complaint.

10        THE COURT:  Right.

11        MR. HOUCHIN:  There's also the natural

12  products, which aren't covered by these antitussive

13  regulations.  I just wanted to make sure I point that

14  out.

15        THE COURT:  No, no.  I'm aware of that, but

16  it's kind of a big deal as it relates to the two

17  products; isn't it?

18        MR. HOUCHIN:  Yes, as to the two products.

19  My -- my point is simply that, even if Defendants were

20  to prevail on the preemption argument, that doesn't

21  apply to all the products, and there's still viable

22  claims in the Complaint.  So that's the only point I'm

23  trying to make there.

24        THE COURT:  Okay.

25        MR. HOUCHIN:  The second -- the second point

1    is, you know, this corrective advertising campaign that

2    you brought up in the Complaint, and, you know, they

3    were seeking a specific disclosure.  There's nothing in

4    the Complaint like what was seen in the _Youngblood_

5    Complaint where they specifically said they want a

6    disclosure that the children's product is identical to

7    the adult product.  Nothing in the Complaint is asking

8    for that specific disclosure.  Really, all we're doing

9    is we're pointing out that they admitted certain

10   information, and I'd like to point the Court's attention

11   to the _Souter vs. Edgewell Care Case_, and that's

12   542 F.Sup 3d 1083, and the pincite is 1097 to 1098.

13   That's a Southern District of California case from 2021,

14   but that case says, even if the Plaintiff did point out

15   that the Defendants admitted certain information in the

16   advertising of their product, it does not mean that, if

17   Plaintiff prevails, Defendants will have to include that

18   information on the product labels.  So I think that case

19   supports our position, that we're not seeking a specific

20   disclaimer here.  All we're challenging are these

21   front-label specific representations for children.

22            THE COURT:  Okay.  All right.  Thank you.

23   Well, I appreciate the arguments on both sides.

24            And, Mr. Cochran, you earned your salary for

25   today for whatever that's worth, but there's a lot of

Exhibit B

1  things that I need to think about here.  I'll be candid.

2  I think the preemption issue is a problem, I think, for

3  the Plaintiff's side.  Having said that, I think I would

4  hope the parties would talk among themselves because I

5  don't think -- I'm not sure the public would be wild

6  about knowing about this to be honest.  I mean, I don't

7  think they would be pleased to know that they're paying,

8  you know, for the same product that basically has no

9  real difference.  But, you know, I leave that to the

10  smarter and better minds to resolve, but I'm going to

11  take the matter under submission.  It may be a little

12  while as I sort of go through all this.  It's a pretty

13  voluminous record, but it may final order.

14         Thank you all.  Have a good weekend and stay

15  safe.

16         MR. HOUCHIN:  Thank you, Your Honor.

17         MR. COCHRAN:  Thank you, Your Honor.

18         THE CLERK:  All rise.  This Court is in recess.

19

20         (Proceedings concluded)

21

22              --oOo--

23

24

25

1                    **C E R T I F I C A T E**

2

3          I hereby certify that, pursuant to Title 28,

4    Section 753, United States Code, the foregoing is a true

5    and correct transcript of the stenographically reported

6    proceedings held in the above-entitled matter and that

7    the transcript page format is in conformance with the

8    regulations of the Judicial Conference of the

9    United States.

10             Certified on June 9, 2023.

11

12

13

14

15

16    _____
      KATHERINE M. STRIDE, CSR, RPR
17    Official Court Reporter
      License No. 11773
18

19

20

21

22

23

24

25

Exhibit B