UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TASHAUNA SEALE, an individual, on behalf of herself, all others similarly situated, and the general public,<br><br>Plaintiff,<br><br>v.<br><br>GSK CONSUMER HEALTH, INC., doing business as Haleon,<br><br>Defendant. | Case No. 2:23-cv-00842-AB-MRWx<br><br>**ORDER GRANTING IN PART AND DENYING IN PART GSK CONSUMER HEALTH, INC.'S MOTION TO DISMISS** |

Before the Court are GSK Consumer Health, Inc.'s ("Defendant") Motion to Dismiss Tashauna Seale's ("Plaintiff") First Amended Complaint ("MTD," Dkt. No. 30) and Motion to Strike Irrelevant Product Allegations ("MTS," Dkt. No. 32). Plaintiff filed Oppositions to both Motions ("MTD Opp'n," Dkt. No. 33; "MTS Opp'n," Dkt. No. 34), and Defendant filed respective Replies ("MTD Reply," Dkt. No. 39; "MTS Reply," Dkt. No. 37). The Court heard oral argument on May 26, 2023. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss.[1]

---

[1] As explained below, because the Court grants Defendant's Motion to Dismiss based

1.

## I.   BACKGROUND

On February 3, 2023, Plaintiff filed this putative class action lawsuit against Defendant in this Court.  ("Compl.," Dkt. No. 1.)  Plaintiff's initial Complaint contended, among other things, that she purchased two of Defendant's products—Children's Robitussin 12-Hour Cough Relief and Children's Robitussin Elderberry Cough + Chest Congestion DM (the "Antitussives"; the "Antitussive products")—that comprised the same formula and ingredients as equivalent adult products that Defendant sold, but nevertheless were marketed for children and sold at higher prices. (*Id.* ¶¶ 1-2, 6-7.)  The Complaint accordingly asserts the following eight claims against Defendant: (1) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq.; (3) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; (4) breach of express warranties, Cal. Com. Code § 2313(1); (5) breach of implied warranties, Cal. Com. Code § 2314; (6) negligent misrepresentation; (7) intentional misrepresentation/fraud; and (8) quasi-contract/unjust enrichment. (Compl. ¶¶ 86-158.)  Plaintiff sought an order compelling Defendant to (a) recall the products using the misleading and unlawful tactics complained of, (b) destroy all misleading, deceptive, and unlawful materials, (c) conduct a corrective advertising campaign, (d) restore the amounts by which it has been unjustly enriched, and (e) pay restitution and punitive damages, as allowed by law.  (*Id.* ¶ 159.)

After Defendant filed an initial motion to dismiss on March 30, 2023, arguing, in part, that Plaintiff's claims were preempted based on the Federal Food, Drug, and Cosmetic Act's ("FDCA") regulation of the products named in Plaintiff's Complaint (Dkt. No. 20 at 16-19), Plaintiff filed a First Amended Complaint ("FAC," Dkt. No.

---

on preemption and failure to plead claims with particularity, Defendant's Motion to Strike, Dkt. No. 32, is DENIED AS MOOT.

2.

25) as a matter of course on April 7, 2023. *See* Fed. R. Civ. P. 15(a)(1)(B). Plaintiff's FAC articulates similar allegations, states the same claims, and seeks nearly the same remedies as her initial Complaint, but adds the following four products (the "Naturals"; the "Naturals products") to its list of allegedly deceptive products sold by Defendant:

- Children's Robitussin Naturals Cough + Immune Health Gummies;
- Children's Robitussin Naturals Cough Relief + Immune Health Syrup;
- Children's Robitussin Naturals Cough + Mucus; and
- Children's Robitussin Naturals Cough + Sleep

On April 21, 2023, Defendant filed the pending Motion to Dismiss and Motion to Strike. (Dkt. Nos. 30, 32.) The Court held a hearing on the Motions on May 26, 2023, and subsequently took the Motions under submission. (Dkt. No. 42.)

## II.    LEGAL STANDARD

### A. MOTION TO DISMISS

#### 1.    Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a court to dismiss claims over which it lacks subject-matter jurisdiction. A Rule 12(b)(1) challenge may be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial attack, the court may dismiss a complaint when the allegations of and documents attached to the complaint are insufficient to confer subject-matter jurisdiction. *See Savage v. Glendale Union High Sch. Dist. No. 205*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). In this context, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996). In contrast, when a court evaluates a factual challenge to jurisdiction, a court is "free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."

3.

*Safe Air for Everyone*, 373 F.3d at 1039 ("In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment.").

### 2. Rule 12(b)(6), Rule 8, and Rule 9(b)

Federal Rule of Civil Procedure 8 requires a plaintiff's pleading to present a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a pleading for "failure to state a claim upon which relief can be granted." A complaint may be dismissed under Rule 12(b)(6) for the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When ruling on a Rule 12(b)(6) motion, "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The court must further make all reasonable inferences in the plaintiff's favor. *Nordstrom v. Ryan*, 762 F.3d 903, 906 (9th Cir. 2014). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

To defeat a Rule 12(b)(6) motion to dismiss, the complaint must provide enough factual detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must also be "plausible on its face," that is, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Labels, conclusions, and "a formulaic recitation of the

4.

elements of a cause of action will not do." *Id.*

Rule 9(b) further requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "[W]hile a federal court will examine state law to determine whether the elements of fraud have been pled sufficiently to state a cause of action, the Rule 9(b) requirement that the circumstances of the fraud must be stated with particularity is a federally imposed rule." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (internal quotation marks and citation omitted). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). "[A] plaintiff must set forth more than the neutral facts necessary to identify the transaction." *Id.* (citation omitted). Indeed, "[t]he plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (citation omitted). "[A]llegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citation omitted).

Finally, a district court should provide leave to amend upon granting a motion to dismiss unless it is clear that the complaint could not be saved by amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend, however, "is properly denied . . . if amendment would be futile." *Carrico v. City and Cty. of S.F.*, 656 F.3d 1002, 1008 (9th Cir. 2011).

### B. MOTION TO STRIKE

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). A court will only consider striking a defense or allegation if it fits within one of these five categories. *Yursik v. Inland Crop Dusters Inc.*, No. 11-cv-01602-LJO-JLTx, 2011 WL 5592888, at *3 (E.D. Cal.

Nov. 16, 2011) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973-74 (9th Cir. 2010)). "Immaterial" matter is that which has "no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (citation omitted)*, rev'd on other grounds*, 510 U.S. 517 (1994). "Impertinent" matter includes "statements that do not pertain, and are not necessary, to the issues in question." *Greer v. County of San Diego*, No. 3:19-cv-0378-GPC-AGSx, 2019 WL 5453955, at *13 (S.D. Cal. Oct. 24, 2019).

"[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). However, Rule 12(f) motions are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Id.* Unless it would prejudice the opposing party, courts freely grant leave to amend stricken pleadings. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Howey v. United States*, 481 F.2d 1187, 1190 (9th Cir. 1973); *see also* Fed. R. Civ. P. 15(a)(2). If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving the assessment of the sufficiency of the allegations for adjudication on the merits after proper development of the factual nature of the claims through discovery. *See Whittlestone*, 618 F.3d at 974–75.

**III.    DISCUSSION**

**A. MOTION TO DISMISS**

Defendant proffers numerous grounds to dismiss various subsets of Plaintiff's claims. The Court addresses those that are relevant to adjudication of the pending Motions below.

6.

### 1. Standing

Though not presented first in its Motion to Dismiss, Defendant raises the threshold argument that Plaintiff lacks standing to pursue her claims regarding the Naturals products.  To establish Article III standing, a plaintiff: "[(1)] must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' [(2)] that is traceable to the challenged action of the defendant and [(3)] likely to be redressed by a favorable judicial decision." *Lexmark Int'l Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.  A plaintiff may establish statutory standing under the UCL, CLRA, and FAL by sufficiently alleging she (1) suffered an economic injury; and (2) relied on a purported material misrepresentation.  *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1111-12 (S.D. Cal. 2011) (citing *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 326 (2011)).

Defendant contends that Plaintiff lacks standing to sue regarding the five non-elderberry products named in the FAC because (1) she "fails to explain her relationship to any other product," and (2) her FAC's new contentions regarding her purchase of "various adult's and children's Robitussin products" (FAC ¶ 15) are too generalized and contradict the CLRA notice letter attached to the FAC (*see* FAC Ex. 1, Dkt. No. 25-1).  (MTD at 25-26.)

As to Defendant's first argument regarding Plaintiff's relationship to the products, Plaintiff does, in fact, allege that she purchased the non-elderberry products "at CVS, Walmart, and/or Walgreens stores in Encino, CA, Tarzana, CA, West Hills, CA, and/or Reseda, CA during the applicable class period."  (FAC ¶ 15; *see also id.* ¶¶ 1, 124.)  The FAC also alleges that Plaintiff read and relied upon Defendant's child-specific representations when purchasing the products and that she would consider purchasing Defendant's products again if the representations were truthful. (*Id.* ¶¶ 8, 15, 125, 128, 136.)  The FAC goes on to depict and describe the particular

7.

alleged misrepresentations for each product (*id.* at 6-38), and further provides the specific price differentials that consumers must pay for each product as compared to their adult equivalents (*id.* ¶¶ 110-13).  Plaintiff's allegations are accordingly sufficient to establish constitutional and statutory standing as to the non-elderberry products listed in the FAC.  *See, e.g.*, *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 586 (C.D. Cal. 2011); *Souter v. Edgewell Pers. Care Co.*, 542 F. Supp. 3d 1083, 1091 (S.D. Cal. 2021); *Nabiyev v. Closet World, Inc.*, No. 2:23-cv-02218-ODW-PDx, 2023 WL 7927739, at *4 (C.D. Cal. Nov. 16, 2023).

As to Defendant's second argument, Defendant does not provide—and this Court has not found—any authority[2] suggesting that providing a non-exhaustive list of violative products in a CLRA notice letter may contradict a complaint's factual allegations to such an extent that plaintiff's constitutional or statutory standing as to the unlisted products would be disrupted.[3]  *See Prescott v. Bayer HealthCare LLC*, No. 20-cv-00102-NC, 2020 WL 4430958, at *9 (N.D. Cal. July 31, 2020) ("Plaintiffs' amendment of their complaint cures any defects with their CLRA notice."); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007) ("The CLRA's

---

[2] Defendant cites *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), for the proposition that "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," (MTD at 9 n.1), but it is unclear how Plaintiff's *addition* of certain products via the FAC *contradicts* (as opposes to supplements) the content of her CLRA letter.  *Sprewell*'s proposition, moreover, does not assist the Court in answering the standing issue Defendant presents, namely how variances between a CLRA notice letter and a complaint affect a party's standing.

[3] That is not to say that deficiencies in a CLRA letter may not, in and of themselves, warrant dismissal on other grounds.  *See, e.g.*, *Govea v. Gruma Corp.*, No. 20-cv-8585-MWF-JCx, 2021 WL 4518457, at *3 (C.D. Cal. Aug. 18, 2021) (assessing the sufficiency of a CLRA pre-suit notice letter separately from the question of standing in ruling on a motion to dismiss); *Ochoa v. Zeroo Gravity Games LLC*, No. 22-cv-5896-GW-ASx, 2023 WL 4291974, at *8 (C.D. Cal. Feb. 1, 2023); *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 915-16, 918-19 (E.D. Cal. 2020).  Defendant, however, has waived such a challenge by not presenting any such argument in its papers or at oral argument.  *See Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).

8.

notice requirement is not jurisdictional . . . .").  Further, given the portions of the FAC detailed above, Plaintiff's allegations regarding the non-elderberry products are not so generalized as to preclude the Court from finding that she has satisfied the requirements of standing.

The Court accordingly DENIES Defendant's Motion to Dismiss insofar as it asserts Plaintiff lacks standing regarding the non-elderberry products named in the FAC.

### 2.  Federal Food, Drug, and Cosmetic Act Preemption

Defendant next argues that the FDCA preempts Plaintiff's state and common law claims.  Specifically, Defendant points to 21 U.S.C. § 379r(a), which prohibits states from "establish[ing] or continu[ing] in effect any requirement . . . that is different from or in addition to, or that is otherwise not identical with, a requirement under [the FDCA]."  Defendant contends that Plaintiff's claims effectively ask the Court to revise the labels on Defendant's six children's products to disclaim that they are identical to corresponding adult products, and, in doing so, impermissibly impose requirements beyond those that the Food and Drug Administration ("FDA") has chosen to implement.

The Supremacy Clause of the Constitution provides that federal law preempts state law.  U.S. Const. art. VI, cl. 2.  Preemption analysis starts with the assumption that state laws are not preempted unless preemption was intended by Congress.  *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).  Congress' intent to preempt state law may be expressed in the statute's language or implied in its statutory framework.  *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992) (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)).  When there is an express preemption provision, the court does "not invoke any presumption against pre-emption but instead 'focus[es] on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.' "  *Puerto Rico v. Franklin Cal. Tax-Free Trust*, 579 U.S. 115, 125 (2016) (quoting *Chamber of*

9.

*Commerce of U.S. v. Whiting*, 563 U.S. 582, 594 (2011)).

As a threshold matter, Defendant's preemption argument applies to only its two Antitussive products because the Naturals products are not covered by § 379r(a). Again, § 379r(a) prohibits requirements that are "different from or in addition to, or . . . otherwise not identical with, . . . requirement[s] under [the FDCA]." The FDA regulates over-the-counter ("OTC") cough and cold medications such as the Antitussive products via a set of regulations called a monograph. *See* 21 C.F.R. § 330.1; Dkt. No. 33 at 11. The FDA promulgated its monograph for cough and cold medications after an extensive review process that involved the recommendation of an expert advisory panel and public notice and comment. *See* 21 C.F.R. § 330.10. This monograph "[a]mong other things, . . . specifies the permissible active ingredients, indications for use, dosing instructions (which vary with age), and other mandatory labeling" for OTC cough and cold medications. *Carter v. Novartis Consumer Health, Inc.*, 582 F. Supp. 2d 1271, 1276 (C.D. Cal. 2008) (citing 21 C.F.R. §§ 341.12, 341.72, 341.74, 341.78, 341.80). Since Defendant's Antitussive products contain dextromethorphan (FAC ¶ 29), they are regulated by the cold and cough medication monograph and therefore are subject to "requirement[s] under [the FDCA]" for purposes of 21 U.S.C. § 379r(a). *See* 21 C.F.R. § 341.14. There is no dispute, however, that Defendant's four Naturals products do not contain any antitussive active ingredient that would subject them to regulation under the FDA cough and cold medication monograph. *See* Dkt. No. 33 at 10; Dkt. No. 39 at 9-10; *see also* 21 C.F.R. § 341.14. The parties further do not contend that any other FDA monograph regulates the Naturals. *See* Dkt. No. 33 at 10; Dkt. No. 39 at 9-10. The Naturals therefore do not fall within 21 U.S.C. § 379r(a)'s purview, and Defendant's preemption argument applies to only the two products Plaintiff named in her original Complaint: Children's Robitussin 12-Hour Cough Relief and Children's Robitussin Elderberry Cough + Chest Congestion DM.

The Court agrees with Defendant that 21 U.S.C. § 379r(a) preempts Plaintiff's

10.

claims as to these two products.  The thrust of the FAC's allegations is that Plaintiff relied on false or misleading representations on Defendant's product labels that led her to believe that the products were specially formulated or uniquely suitable for children when, in fact, they were identical to Defendant's equivalent adult products.  (*See* FAC ¶¶ 15, 33, 44; *see also id.* ¶¶ 41-43.)  The FAC states that "Defendant fail[ed] to disclose the true nature of [its] Products" (*id.* ¶ 106; *see also id.* ¶¶ 146, 166, 206, 213), that Plaintiff "would not have purchased the Products . . . had she known the representations were false," and that Plaintiff "would consider purchasing the Products again if the advertising statements made on the Products['] labels were . . . truthful . . . ." (*id.* ¶ 15; *see also id.* ¶ 136).  The FAC accordingly seeks orders compelling Defendant to "conduct a corrective advertising campaign" and to "destroy all misleading and deceptive advertising materials *and . . . labels*, and to recall all offending products."  (*Id.* ¶ 228(e)-(f) (emphasis added).)  Plaintiff thus effectively seeks either a requirement that Defendant disclose the similarity of its children's and adult products on its labeling or, at least, a prohibition on Defendant labeling a product as being suitable for children if it is pharmacologically the same as an adult product.  The FDA's monograph for cough and cold medications, however, already regulates the labeling of antitussive drug products, including those intended for children, via 21 C.F.R. § 341.74,[4] and that section does not impose any requirement or

---

[4] Specifically, 21 C.F.R. § 341.74 requires and limits the particular indications, warnings, and directions included on products containing dextromethorphan.  *See id.* § 341.74(b)(3)(vi)-(vii), (c)(2)-(3), (c)(4)(v)-(vi), (d)(iii).  Many of these requirements contemplate dextromethorphan products being labeled only for children under 12 years of age, only for adults, or for both adults and children under 12 years of age.  *See id.* § 341.74 (c)(2)-(3), (c)(4)(v)-(vi).  The Antitussive products addressed in Plaintiff's FAC clearly follow the latter two approaches and thus must comply with monograph labeling requirements specific to these approaches.  (*See* FAC ¶¶ 21, 24 (depicting one product labeled "For adults & children" and another marked "For Adults"); *see also id.* ¶¶ 34-35, 39 (similar).)  The monograph, however, provides no disclosure or prohibition for products following either of Defendant's labeling approaches like the one Plaintiff seeks, namely a disclosure of pharmacologically equivalent formulas or a prohibition on labeling a product uniquely suitable for

11.

prohibition like those that Plaintiff seeks, *see id.* The FAC thus impermissibly seeks to impose a requirement "that is different from or in addition to, or that is otherwise not identical with" the FDA's monograph. *See* § 379r(a)(2). Plaintiff's claims as to the two antitussive products named in the FAC therefore are preempted by federal law and must be DISMISSED.[5] *See Chen v. Geo Grp., Inc.*, 287 F. Supp. 3d 1158, 1163 (W.D. Wash. 2017) ("Where a state law claim is preempted by federal law, dismissal may be granted under [Rule] 12(b)(6)."); *Carter*, 582 F. Supp. 2d at 1282-86 (finding common law and breach of warranty claims seeking monetary damages preempted by § 379r(a) because they imposed requirements "at variance with FDA regulations"); *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 324 (2008); *Youngblood v. CVS Pharmacy*, No. 2:20-cv-06251-MCS-MRWx, 2021 WL 3700256, at *1-2 (C.D. Cal. Aug. 17, 2021) (finding FAL, CLRA, and UCL claims preempted under § 379r(a) where defendant allegedly sold OTC acetaminophen marketed for infants at a higher price

children.

[5] The cases Plaintiff cites to oppose this outcome miss the mark for various reasons. Setting aside cases that do not analyze the express preemption provision in § 379r(a), *see Hawkins v. Kroger Co.*, 906 F.3d 763, 771-72 (9th Cir. 2018); *Corra v. Energizer Holdings, Inc.*, 962 F. Supp. 2d 1207, 1213-15 (E.D. Cal. 2013); *In re Epogen & Aranesp Off-Label Mktg. & Sales Pracs. Litig.*, 590 F. Supp. 2d 1282, 1288-92 (C.D. Cal. 2008), Plaintiff's authorities are distinguishable in that they lack specific FDA regulations preempting the claims at issue, *see Burchfield v. Prestige Consumer Healthcare, Inc.,* 534 F. Supp. 3d 1192, 1204 (C.D. Cal. 2021); *Slaten v. Christian Dior, Inc.*, No. 23-cv-00409-JSC, 2023 WL 3437827, at *2 (N.D. Cal. May 12, 2023); *Zimmerman v. L'Oreal USA, Inc.*, No. 22-cv-07609-HSG, 2023 WL 4564552, at *4 (N.D. Cal. July 17, 2023), involve defendants who fail to demonstrate how the claims at issue are not identical to FDCA requirements, *see McFall v. Perrigo Co.*, No. 2:20-cv-07752-FLA-MRWx, 2021 WL 2327936, at *9 (C.D. Cal. Apr. 15, 2021), or do not involve plaintiffs seeking to impose labeling requirements or prohibitions, *see Souter v. Edgewell Pers. Care Co.*, 542 F. Supp. 3d 1083, 1088-89, 1097-98 (S.D. Cal. 2021); *Moreno v. Vi-Jon, Inc.*, No. 3:20-cv-01446-JM-BGSx, 2021 WL 807683, at *1-2, *10-11 (S.D. Cal. Mar. 3, 2021); *Fagan v. Neutrogena Corp.*, No. 5:13-cv-01316-SVW-OPx, 2014 WL 92255, at *1 (C.D. Cal. Jan. 8, 2014). Here, where Plaintiff's claims seek to alter or control Defendant's labeling of children's antitussive products in ways not identical to the specific children's antitussive labeling requirements expressed in 21 C.F.R. § 341.74, the preemption provision in 21 U.S.C. § 379r(a) applies.

than the same formula marketed for children).

Aside from resisting this straightforward conclusion, Plaintiff argues that her claims are not preempted by § 379r(a)(2) because they are parallel to the FDCA's prohibition on "misbranded" drugs in 21 U.S.C. § 352(a)(1). (MTD Opp'n at 12-13.) Though § 352(a)(1) does define drugs with "labeling [that] is false or misleading in any particular" as "misbranded," Plaintiff overlooks the additional provision set out in 21 C.F.R. § 330.1 that deems an OTC drug "not misbranded" if it meets the conditions imposed by both 21 C.F.R. part 330 and "any applicable monograph."  Here, Plaintiff does not dispute that Defendant's Antitussive products "meet[] the conditions set by the FDA's rigorous [monograph] process" (MTD at 12), nor does she contend that the products fall short of the conditions listed in part 330 of the relevant regulations. Thus, if Plaintiff were permitted to proceed on the theory that her claims are parallel to § 352(a)(1), any finding of liability in her favor would conflict with preexisting regulations deeming Defendant's Antitussive drugs "not misbranded," which "would do exactly what Congress, in passing §379r, sought to forbid: using state law causes of action to bootstrap labeling requirements that are 'not identical with' federal regulation." *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 375 (S.D.N.Y. 2014) (stating that the appropriate FDCA preemption standard "is whether state law diverges from federal law at all"); *see Amara v. Publix Supermarkets, Inc.*, No. 8:22-cv-367-VMC-JSSx, 2022 WL 3357575, at *5 (M.D. Fla. Aug. 15, 2022); *Carter*, 582 F. Supp. 2d at 1283; *Youngblood*, 2021 WL 3700256, at *3.

Plaintiff's argument also ignores that the FAC seeks to impose upon Defendant an *actual requirement* of either explicit disclosure or compelled omission regarding the similarity of its children's and adult cough and cold medications—a requirement imposed by neither the FDCA nor the FDA's relevant monograph.  This is, however, precisely what § 379r(a)(2) aims to prevent. *See Harris v. Topco Assocs., LLC*, 538 F. Supp. 3d 826, 831 (N.D. Ill. 2021) (reasoning that a plaintiff who cited § 352(a) to avoid § 379r(a) preemption "misse[d] the points of preemption, . . . as her claims

13.

[we]re based on the labeling of the products themselves, not on a legal theory"); *Goldstein v. Walmart, Inc.*, 637 F. Supp. 3d 95, 112 n.6 (S.D.N.Y. 2022). It is essentially inconsequential that the *theory* of Plaintiff's claims is reflective of § 352(a)(1) where Plaintiff seeks to impose a specific labeling requirement or prohibition regarding children's products that are pharmacologically equivalent to adult products that is not imposed by the FDA's monograph. The Court accordingly is not convinced that § 352(a)(1) insulates Plaintiff's claims as to the Antitussive products from preemption.[6]

The Court is left to determine whether Plaintiff should be provided leave to amend. Though courts "should freely give leave [to amend] when justice so requires," Fed. R. Civ. P. 15(a)(2), preemption generally cannot be cured by amendment. *See Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1205 (9th Cir. 2021); *Chae v. SLM Corp.*, 593 F.3d 936, 943 (9th Cir. 2010); *Lions Gate Ent. Inc. v. TD Ameritrade Servs. Co., Inc.*, 170 F. Supp. 3d 1249, 1266 (C.D. Cal. 2016). Here, Plaintiff already has amended her complaint once in an apparent attempt to include products that would avoid federal preemption, and she has not presented any viable theory of her claims that would extricate the Antitussive products from the FDA monograph's preemptive effect. *See Youngblood*, 2021 WL 3700256, at *4. The Court accordingly finds that amendment as to the Antitussive products would be futile and DECLINES to grant Plaintiff further leave to amend regarding those products.

//

//

---

[6] Plaintiff's citations to *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 447-48 (2005) and *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 495 (1996) do not alter this outcome. These cases together stand only for the proposition that federal preemption does not necessarily apply where certain common law claims and remedies are parallel or equivalent to federal regulations. *See Bates*, 544 U.S. at 447-48; *Medtronic*, 518 U.S. at 495. Such holdings do not reach the situation presented here, that is whether federal preemption applies to claims specifically requiring or prohibiting certain disclosures that are *at variance* with FDA regulations.

14.

### 3. "Defective Pricing" Theory

Citing *Boris v. Wal-Mart Stores, Inc.*, 35 F. Supp. 3d 1163, 1168-70 (C.D. Cal. 2014), and its accompanying Ninth Circuit affirmance, 649 F. App'x 424 (9th Cir. 2016), Defendant next contends that Plaintiff cannot maintain her UCL, FAL, and CLRA claims because they are based on an "inescapable foundation . . . that the ***price*** of children's Robitussin compared to adult Robitussin communicates there is something uniquely suitable about the medicine for children," which raises a "political question [of price regulation] beyond the judiciary's authority" (MTD at 21-22 (citation omitted)).  This argument is without merit because Plaintiff's allegations are clearly distinguishable from the circumstances in *Boris*.

The plaintiffs in *Boris* "d[id] not claim that the packaging for [the two comparable headache relief medications they presented] contained any affirmative misrepresentations . . . [or] omitted necessary information . . . ."  35 F. Supp. at 1168 (citation omitted).  They instead argued only that "by charging more for [one medication] using the color red on its packaging, [defendant] deceived [them] into believing [the medication] was more effective than [another] lower-priced, green-packaged [medication] when, in fact, both medications [were] . . . pharmacologically identical."  *Id.*  Analyzing the UCL, FAL, CLRA, and relevant case law, the *Boris* Court determined that its plaintiffs' claims failed under the statutes' "unlawful" prongs because "false advertising violations [under the three statutes] must be premised on some statement or representation by the defendant about the product," yet "neither the price . . . nor the red background of [the challenged product's] packaging constitute[d] a representation or statement about the product."  *Id.* at 1169-70.  The plaintiffs' claims further could not be adjudicated under the UCL's "unfairness" prong because "[p]laintiffs ha[d] not pointed to any specific constitutional, statutory, or regulatory provision that embodie[d] a policy that [the challenged product]'s price and red packaging violate[d]."  *Id.* at 1171.  The Court provided the following reasoning on this point:

15.

> Absent some legislative enactment, price setting is ordinarily left to the business judgment of merchants. Taken to its logical conclusion, Plaintiffs' claim requires the judiciary to make pricing decisions, such as ruling that pharmacologically identical drugs must be the same price or may have only a limited price differential, or imposing liability for differential pricing on a necessarily unpredictable case-by-case basis.

*Id.* at 1171-72 (footnote omitted).

Plaintiff's FAC, in contrast, clearly takes issue with purported affirmative misrepresentations and omissions as the source of Defendant's alleged deception and, thus, does not trigger *Boris*'s analysis. Specifically, Plaintiff alleges that "different marketing and labeling on the front of . . . [Defendant's] Robitussin products" makes "reasonable consumers believe that . . . the Children's Products [are] better suited or more appropriate for children," which is "misleading because the Children's Products are identical to the Adult[] Products." (FAC ¶¶ 105-07; *see also id.* at ¶¶ 116-18, 125-29.) She also spends over thirty pages detailing the potential misrepresentations and omissions on Defendant's six products that purportedly mislead consumers (*id.* at 6-38; *see, e.g., id.* at ¶ 20 (pointing to "Children's" label and "cartoon-like illustrations of a child" as deceptive statements)). Such allegations do not require the Court "to evaluate whether a product's price is appropriate or too high in the abstract or based solely on non-communicative factors, such as a price differential between products or different-colored packaging." *McFall*, 2021 WL 2327936, at *5. Instead, "the question before the court is whether [Defendants'] packaging and labeling is misleading based on communicative statements and images." *Id.* In this regard, Plaintiff's claims are much more akin to cases that distinguish claims challenging specific misleading packaging and labeling statements from the reasoning in *Boris*. *See DiGiacinto v. RB Health (US) LLC*, 668 F. Supp. 3d 950, 963-64 (N.D. Cal. 2023); *Burchfield v. Prestige Consumer Healthcare, Inc.*, 534 F. Supp. 3d 1192, 1203 (C.D. Cal. 2021); *McFall*, 2021 WL 2327936, at *5; *Youngblood v. CVS Pharmacy*, No. 2:20-cv-06251-MCS-MRWx, 2020 WL 8991698, at *3 (C.D. Cal. Oct. 15, 2020).

16.

The Court ultimately agrees with these cases and denies Defendant's request to dismiss Plaintiff's state consumer protection claims under *Boris*.  *See McFall*, 2021 WL 2327936, at *6 ("Whether advertising is false or misleading is an issue the Legislature has specifically directed to the courts for resolution through the FAL, UCL, and CLRA.").

### 4.  Economic Loss Rule

Defendant next argues that Plaintiff's negligent misrepresentation and omission-based common law fraud claims are barred by the economic loss rule because she alleges purely economic harms and "bases her negligent misrepresentation and fraud claims on the same alleged representations as her contract-based breach of express warranty claim."  (MTD at 29.)

"[T]he economic loss doctrine was created to prevent 'the law of contract and the law of tort from dissolving one into the other.' "  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 967 (S.D. Cal. 2014) (quoting *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988, 102 P.3d 268, 272 (2004) (internal quotations omitted)).  "The . . . rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter*, 34 Cal. 4th at 988 (citation omitted).

"In California, courts have found that there are certain exceptions to this general rule," *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1282 (C.D. Cal. 2022), specifically in cases where "the duty that gives rise to tort liability is either completely independent of the contract or arises from conduct which is both intentional and intended to harm," *Erlich v. Menezes*, 21 Cal. 4th 543, 552 (1999); *see Robinson Helicopter*, 34 Cal. 4th at 990.  Such a situation may arise where "[a] breach is accompanied by a traditional common law tort, such as fraud," *Erlich*, 21 Cal. 4th at 553 (quoting *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal. 4th 85, 105 (1995) (Mosk, J., concurring & dissenting)), though this fraud exception is "narrow in scope

17.

and limited to a defendant's affirmative misrepresentations on which a plaintiff relies and which expose a plaintiff to liability for personal damages independent of the plaintiff's economic loss," *Robinson Helicopter*, 34 Cal. 4th at 993.

The elements of fraud under California law are (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996). "Fraudulent inducement is a subset of fraud that 'occurs when the promisor knows what he is signing but his consent [to enter a contract] is induced by fraud . . . .' " *Hernandez v. TLC of the Bay Area, Inc.*, 263 F. Supp. 3d 849, 853 (N.D. Cal. 2017) (emphasis omitted) (quoting *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996)). Fraudulent inducement may give rise to a plaintiff recovering tort damages in a contract case. *See Robinson Helicopter*, 34 Cal. 4th at 990.

Plaintiff alleges that "Defendant intentionally misrepresented, omitted, and concealed from consumers material facts" regarding its products; that "Defendant made these misrepresentations with actual knowledge of their falsity" and "with the intent to induce Plaintiff . . . to purchase the Products"; and that "Plaintiff . . . justifiably relied on the[] [misrepresentations]," which "induced [Plaintiff] to purchase the Products at a premium." (FAC ¶¶ 214-16, 218-19.) Plaintiff's allegations, moreover, focus on Defendant's allegedly false and misleading advertising statements suggesting that its products were specially formulated for children, when they were in fact not (*see id.* ¶ 217), and she avers that she "would not have purchased the Products or paid as much for the Products if the true facts had been known," (*see id.* ¶ 220). These allegations sufficiently demonstrate that "[D]efendant's conduct in fraudulently inducing [Plaintiff] to enter a contract [wa]s separate from . . . [D]efendant's later [alleged] breach of . . . contract or warranty . . . that w[as] agreed to." *Dhital v. Nissan N. Am., Inc.*, 84 Cal. App. 5th 828, 841 (2022); *see also Robinson Helicopter*, 34 Cal. 4th at 990-91 (holding a defendant's "tortious conduct was separate from the

18.

breach itself" where a plaintiff demonstrated defendant's affirmative representations, justifiable reliance, and but-for causation).  Since Plaintiff articulates affirmative representations that could support a claim of fraudulent inducement, the economic loss rule does not bar her fraud claim.

As for Plaintiff's negligent misrepresentation claim, "[d]istrict courts in the Ninth Circuit are split on the issue of whether the economic loss rule bars negligent misrepresentation claims." *DiGiacinto*, 668 F. Supp. 3d at 967.  One Ninth Circuit case, however, has held that "California law classifies negligent misrepresentation as a species of fraud . . . for which economic loss is recoverable," *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*, 315 F. App'x 603, 607 (9th Cir. 2008) (citations omitted), while another has affirmed that the economic loss rule did not bar a plaintiff from recovering economic losses for negligent misrepresentation where "one party ha[d] lied to the other," *Hannibal Pictures, Inc. v. Sonja Prods. LLC,* 432 F. App'x 700, 701 (9th Cir. 2011) (citation omitted).  The Court is inclined to follow this persuasive authority from the circuit court here, where Plaintiff alleges that Defendant's failure to disclose the true nature of its products fraudulently induced her to purchase them.  (*See* FAC ¶¶ 47, 106, 114, 136, 146, 166, 186, 195, 206, 208-10, 213.)

The Court therefore DENIES Defendant's Motion to Dismiss as to the economic loss rule barring Plaintiff's negligent misrepresentation and fraud claims.

### 5.  Equitable Relief

Defendant next takes issue with Plaintiff's claims seeking equitable relief, arguing that Plaintiff does not adequately allege that she lacks a legal remedy and that she further fails to plead facts to support such an allegation.  Plaintiff seeks equitable restitution via her FAL, CLRA, and unjust enrichment claims.  (FAC ¶¶ 170, 182, 227.)  Her FAL and CLRA claims also generally seek injunctive relief, while her UCL claim seeks "public injunctive relief enjoining Defendant's deceptive practices."  (*Id.* ¶¶ 170, 182, 190.)  Plaintiff's prayer for relief further requests "[a]n order compelling

19.

Defendant to conduct a corrective advertising campaign," "[a]n order compelling Defendant to destroy all misleading and deceptive advertising materials and Products labels, and to recall all offending Products," and "[a]n order awarding restitution in the amount of the price premium paid by . . . class members for the Products." (*Id.* ¶ 228e-f, h.)

Federal courts "must apply traditional equitable principles before awarding restitution . . . ." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020). Accordingly, Plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm." *Id.* at 844; *see Mort v. United States*, 86 F.3d 890, 892 (9th Cir. 1996) ("It is a basic doctrine of equity jurisprudence that courts of equity should not act . . . when the moving party has an adequate remedy at law." (citation omitted)).

Plaintiff fails to cite—and the Court cannot find—any allegation in the FAC demonstrating that legal damages, as opposed to restitution, would not make her whole. Indeed, Plaintiff does not even allege that legal damages are inadequate, nor any facts that would support such a contention. Given that the FAC only provides vague requests for restitution without more, dismissal of Plaintiff's claims insofar as they seek restitution is appropriate. *Drake v. Toyota Motor Corp.*, No. 2:20-cv-01421-SB-PLAx, 2021 WL 2024860, at *7 (C.D. Cal. May 17, 2021) ("[I]t is unclear how damages would not be sufficient to render relief sought by the unjust enrichment claim unnecessary . . . ."); *Youngblood*, 2020 WL 8991698, at *6; *McFall*, 2021 WL 2327936, at *15. Plaintiff, however, will be permitted to amend the FAC to allege why monetary damages are not adequate to address her alleged harms such that restitution is necessary. *See LaFontaine v. Mitsubishi Motors No. Am., Inc.*, No. 16-cv-16-00943-JVS-FFMx, 2017 WL 8220705, at *7 (C.D. Cal. Feb. 23, 2017).

As to Plaintiff's requests for injunctive relief, damages for past harm are not always an adequate remedy for prospective harm caused by alleged false advertising because damages "[do] [not] ensure that [the plaintiff] (and other consumers) can rely

20.

on [a defendant]'s representations in the future." *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021); *see Moran v. Bondi Sands (USA) Inc.*, No. 21-cv-07961-JSW, 2022 WL 1288984, at *6 (N.D. Cal. Apr. 29, 2022); *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2021 WL 3621837, at *11 (N.D. Cal. Aug. 16, 2021); *Adams v. Cole Haan, LLC*, No. 8:20-cv-00913-JWH-DFMx, 2021 WL 4907248, at *4 (C.D. Cal. Mar. 1, 2021). In such circumstances, an injunction may be the appropriate relief to prevent such future harm. *See, e.g.*, *Zeiger*, 526 F. Supp. 3d at 687; *Evans v. DSW, Inc.*, No. 16-cv-3791 JGB-SPx, 2017 WL 7058232, at *7 (C.D. Cal. Sept. 14, 2017). Here, Plaintiff alleges that she "would consider purchasing [defendant]'s Products again if the advertising statements made on the . . . labels were, in fact, truthful" (FAC ¶ 170; *see also id.* ¶¶ 136-37), and she further states "[t]he representations on the Products' labels . . . are false and misleading, and ha[ve] the capacity, tendency, and likelihood to confuse or confound Plaintiff and other consumers acting reasonably (including the putative Class) . . . ," (*id.* ¶ 129). These allegations are sufficient to infer that Plaintiff has premised her claims for injunctive relief on potential future harm such that her claims should not be dismissed to the extent they seek such relief. *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018) ("[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false . . . .").

Insofar as Plaintiff's claims seek restitution, Defendant's Motion to Dismiss is GRANTED with leave to amend. Defendant's Motion is DENIED to the extent Plaintiff's claims seek injunctive relief.

### 6. Rule 9(b) Particularity: Fraud-based Claims

Defendant also argues that Plaintiff has failed to plead its fraud-based claims with sufficient particularity under Federal Rule of Civil Procedure 9(b). (MTD at 23-25.) Rule 9(b) requires a party "alleging fraud or mistake . . . [to] state with particularity the circumstances constituting fraud or mistake." To satisfy this

21.

requirement, the complaint must include "an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.' " *Swartz*, 476 F.3d at 764 (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)).  In essence, plaintiffs are required to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *U.S. ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011)).  Here, Rule 9(b)'s requirement applies to Plaintiff's UCL, FAL, and CLRA claims, as well as her omission-based common law claims for negligent misrepresentation and fraud. *See Kearns*, 567 F.3d at 1125, 1127.

Plaintiff's allegations pertaining to her fraud-based claims fail Rule 9(b)'s particularity standard.  Specifically, Plaintiff fails to adequately allege when and where she purchased the non-elderberry products named in the FAC.  Though Plaintiff alleges she "purchased the Children's Elderberry Product for her child in 2021 or 2022 at a CVS store in Encino, California" (FAC ¶ 15), she vaguely states only that she purchased "various adult's and children's Robitussin products . . . at CVS, Walmart, and/or Walgreens stores in Encino, CA, Tarzana, CA, West Hills, CA, and/or Reseda, CA" without providing which products were purchased where (*id.*). The FAC further states that she "purchased both Children's and Adult's Robitussin products during the Class Period," (*id.* ¶ 127), but this allegation provides very little specificity given that the FAC later describes the Class Period as "the time period from when the Children's Robitussin products first entered into the stream of commerce until the present," (*id.* ¶ 141).  Such allegations fail Rule 9(b)'s time and place requirements. *See, e.g.*, *Alvarez v. NBTY, Inc.*, No. 17-cv-00567-BAS-BGSx, 2017 WL 6059159, at *9 (S.D. Cal. Dec. 6, 2017) (finding allegations insufficient where plaintiff did not provide dates and specific locations of purchased products); *Grivas v. Metagenics, Inc.*, No. 15-cv-01838-CJC-DFMx, 2018 WL 6185977, at *6

22.

(C.D. Cal. Jan. 4, 2018).

Plaintiff otherwise details and depicts alleged child-specific misrepresentations made on all six of Defendant's products (*see, e.g.*, *id.* ¶¶ 20-23, 34-38, 49, 51, 53-56, 65-69, 78-80, 82, 91-95), alleges the misrepresentations deceived consumers into believing the products were uniquely suitable for children when they were not (*see, e.g.*, *id.* ¶¶ 105-07, 115-17), attests that she and other consumers justifiably relied on them when making the decision to purchase the Products (*see, e.g.*, *id.* ¶ 210), and states that she and other consumers would not have purchased the products had they known they were identical to equivalent products marketed for adults (*see, e.g.*, *id.* ¶¶ 128, 149). Setting aside Plaintiff's deficient allegations regarding when and where she purchased Defendant's products, her other fraud allegations suffice in meeting Rule 9(b)'s standard. *See, e.g.*, *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1077 (E.D. Cal. 2010) (finding similar allegations sufficient under Rule 9(b)); *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1124 (C.D. Cal. 2009) (similar); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1306 n.19 (S.D. Cal. 2003).

Defendant further argues that Plaintiff's omission-based claims fail Rule 9(b) by not providing what should have been disclosed and where, along with "facts showing the plaintiff would have relied on it had it been revealed." (MTD at 24.) The Court disagrees. Plaintiff specifically alleges that Defendant fails to disclose the "true nature of [its] Products," i.e., that "the Children's Products are identical to the Adult's Products." (FAC ¶¶ 106-07; *see also id.* ¶ 146) She further states "[h]ad Plaintiff known the truth, Plaintiff would not have purchased the Products or would not have paid as much as she had for the Products," (*id.* ¶ 128), and that she "would consider purchasing the Products again if the advertising statements *made on the Products labels* were, in fact, truthful and represented in a manner as not to deceive consumers," (*id.* ¶ 15 (emphasis added)).

Plaintiff's fraud-based claims have nevertheless fallen short of Rule 9(b)'s

23.

particularity standard by failing to adequately allege when and where Plaintiff purchased Defendant's products.  These claims are accordingly DISMISSED with leave to amend.[7]

### 7. Rule 8 Plausibility: Warranty Claims

Defendant also challenges the sufficiency of Plaintiff's express and implied warranty allegations.  "[T]o prevail on a breach of express warranty claim, the plaintiff must prove (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached."  *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010).  Defendant argues that Plaintiff's claim for express warranty fails because the FAC fails to identify a false statement on any label she read.  (MTD at 30.)

As Defendant notes, Plaintiff's express warranty claim incorporates "foregoing representations" in the FAC as a placeholder for the alleged false statements required for that claim.  (FAC ¶ 193.)  The FAC thoroughly details these representations elsewhere, stating that representations like "For Children" statements and "cartoon-like illustration[s]" used on Defendant's labels and advertising, (*id.* ¶¶ 78, 81; *see also id.* ¶¶ 49, 54, 65, 68, 91, 94), make reasonable consumers believe that Defendant's products are "specially formulated for children . . ., or otherwise uniquely suitable for children," (*id.* ¶ 15; *see also, e.g.*, *id.* ¶¶ 116-17, 122, 126), when they are not.  Such "[s]tatements made by a manufacturer through its [labels and] advertising efforts can be construed as warranty statements."  *Aaronson v. Vital Pharms., Inc.*, No. 09-cv-1333-W-CABx, 2010 WL 625337, at *6 (S.D. Cal. Feb. 17, 2010) (citing *Keith v. Buchanan*, 173 Cal. App. 3d 13, 21-22 (1985)); *see DiGiacinto*, 668 F. Supp. 3d at 966.  Further, contrary to Defendant's contention, even if these individual statements

---

[7] Because the Court dismisses Plaintiff's fraud-based claims under Rule 9(b), the Court does not reach the issue of whether Defendant's labels are likely to deceive reasonable consumers.  (*See* MTD at 26-28.)

24.

are factually true, they may coalesce into an express warranty that misleads reasonable consumers into believing that Defendant's products are specifically formulated for children. *See Allred v. Kellogg Co.*, No. 17-cv-1354-AJB-BLMx, 2018 WL 1158885, at *5 (S.D. Cal. Feb. 23, 2018); *Sims v. Campbell Soup Co.*, No.18-cv-668-PSG-SPx, 2018 WL 7568640, at *9 (C.D. Cal. Sept. 24, 2018) (finding that lack of a front label statement indicating artificial flavors combined with other statements indicating beverages contained "other natural flavors" could form an express warranty that the beverage contained only natural flavors). "Whether the label actually provided [such] a warranty . . . [is] not [an] appropriate question[] to decide on a dismissal motion." *Allred*, 2018 WL 1158885, at *5. Plaintiff accordingly has plausibly alleged a breach of an express warranty.

As for Plaintiff's implied warranty of merchantability claim, Defendant argues that Plaintiff cannot maintain this claim because she purchased Defendant's products from retailers and, therefore, is not in privity with Defendant. (MTD at 30.) To assert a claim for breach of an implied warranty, a plaintiff generally must "stand in vertical contractual privity with the defendant," meaning that the "buyer and seller . . . are in adjoining links of the distribution chain*." Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citation omitted). "Thus, an end consumer . . . who buys from a retailer is not in privity with a manufacturer." *Id.*; *see Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695 (1954).

Plaintiff does not contest her lack of privity with Defendant. She instead invokes two exceptions to the privity requirement recognized by California courts. She first cites an exception for "cases involving foodstuffs and drugs," (MTD Opp'n at 27-28), but as Plaintiff's own cited case explains, for "cases that address the foodstuffs [and drugs] exception in the context of privity, the rationale for permitting a claim to proceed is that the alleged defect has rendered the [product] unfit for human consumption." *Musgrave v. Taylor Farms Pac., Inc.*, No. 18-cv-02841-JSW, 2019 WL 8230850, at *5 (N.D. Cal. Feb. 20, 2019); *accord Burr*, 42 Cal. 2d at 695 (1954)

25.

("In this state an exception to the requirement of privity has been made in cases involving foodstuffs, where it is held that an implied warranty of *fitness for human consumption* runs from the manufacturer to the ultimate consumer . . . ." (emphasis added)); *Klein v. Duchess Sandwich Co.*, 14 Cal. 2d 272, 277 (1939); *see also Gottsdanker v. Cutter Lab'ys*, 182 Cal. App. 2d 602, 605-07 (1960) (invoking the exception for vaccines that contained live virus and caused disease); *Vaccarezza v. Sanguinetti*, 71 Cal. App. 2d 687, 689-90 (1945) (similar). Since Plaintiff makes no allegation that Defendant's products are unfit for human consumption or caused her any physical injury, she is unable to invoke this exception. *See, e.g.*, *Woodard v. Labrada*, No. 16-cv-16189-JGB-SPx, 2021 WL 4499184, at *21 (C.D. Cal. Aug. 31, 2021); *DeArmey v. Hawaiian Isles Kona Coffee Co., Ltd*, No. 19-cv-19432-JVS-KESx, 2019 WL 6723413, at *5 (C.D. Cal. July 22, 2019); *Nadler v. Nature's Way Prod., LLC*, No. 13-cv-13100-TJH-OPx, 2014 WL 12601567, at *3 (C.D. Cal. Mar. 27, 2014).

Plaintiff next cites an exception to the privity requirement "where there has been reliance on a manufacturer's representations on labels or advertising," (MTD Opp'n at 27-28), but the California Supreme Court has held that this exception is "applicable only to express warranties." *Burr*, 42 Cal. 2d at 696. It is similarly of no avail to Plaintiff in maintaining her implied warranty claim. *See In re Natera Prenatal Testing Litig.*, 664 F. Supp. 3d 995, 1010 (N.D. Cal. 2023); *Angiano v. Anheuser-Busch InBev Worldwide, Inc.*, 532 F. Supp. 3d 911, 920 (C.D. Cal. 2021); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 854 (N.D. Cal. 2018); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 669 n.24 (C.D. Cal. 2014).

Defendant's Motion to Dismiss with respect to Plaintiff's implied warranty claim accordingly is GRANTED. As amendment could not alleviate Plaintiff's privity deficiency, Plaintiff will not be granted leave to amend that claim. Defendant's Motion to Dismiss is otherwise DENIED with respect to Plaintiff's express warranty claim.

26.

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss as follows:

- Plaintiff's claims as they relate to Defendant's Antitussive products are DISMISSED without leave to amend based on preemption.

- Plaintiff's claims insofar as they seek restitution are DISMISSED with leave to amend.

- Plaintiff's fraud-based claims (UCL, FAL, CLRA, negligent misrepresentation, and fraud) are DISMISSED with leave to amend based on failure to meet Federal Rule of Civil Procedure 9(b)'s particularity requirement.

- Plaintiff's implied warranty claim is DISMISSED without leave to amend.

- Defendant's Motion to Dismiss is otherwise DENIED.

As stated above, because the Court grants Defendant's Motion to Dismiss based on preemption and failure to plead claims with particularity, Defendant's Motion to Strike, Dkt. No. 32, is **DENIED AS MOOT**. Plaintiff must file any amended complaint within twenty one days of this Order's issuance.

Dated: February 27, 2024       _____

HONORABLE ANDRÉ BIROTTE JR.
UNITED STATES DISTRICT COURT JUDGE

27.